THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>                Plaintiff,<br><br>        v.<br><br>Event Ticket Sales, LLC and<br>Guinio W. Volpone,<br><br>                Defendants. | Case No. 1:22-cv-02864<br><br>Dist. Judge Andrea R. Wood<br><br>Mag. Judge Sheila M. Finnegan |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff") respectfully submits this memorandum ("Memorandum") in support of Plaintiff's Motion for Partial Summary Judgment ("Motion") with respect to the following issues: (1) copyright infringement by Defendant Event Ticket Sales, LLC ("ETS"), (2) vicarious copyright infringement by Defendant Guinio W. Volpone ("Volpone" and, together with ETS, "Defendants"), (3) contributory copyright infringement by Volpone, (4) violations of Section 1202(b) of the Digital Millennium Copyright Act ("DMCA") by both Defendants, (5) the willfulness of Defendants' infringements; and (6) all of the affirmative defenses asserted by the Defendants. As set forth below, there is no genuine issue of material fact regarding these issues. In support of this Motion, and pursuant to Local Rule 56.1(d), Oppenheimer submits Plaintiff's Statement of Undisputed Material Facts ("SOF").

### I.    BACKGROUND

In August 2012, as a credentialed photographer at The Biltmore Concert Series in Asheville, North Carolina, Oppenheimer created a photograph of a performance by the Steve Miller Band ("Photograph"). (SOF ¶ 8.) Within months of capturing the Photograph, he proceeded to register the Photograph with the U.S. Copyright Office as part of a collection of photographs.

(SOF ¶ 9.) Oppenheimer then inserted various copyright management information ("CMI") on the face and in the metadata of the Photograph. (SOF ¶ 11.) He then published the Photograph through his usual distribution channels, also including CMI in adjacent captions. (SOF ¶¶ 10–11.) Years later, ETS created unauthorized copies of the Photograph and incorporated the Photograph into multiple webpages on various websites controlled by ETS (collectively, "Infringing URLs"). (SOF ¶¶ 17–22.) The versions of the Photograph contained at the Infringing URLs featured cropped versions of the Photograph, with Oppenheimer's CMI removed from the face of the Photograph. (SOF ¶¶ 11, 17–22.) After discovering ETS's use of the Photograph in June 2019, Oppenheimer sent correspondence to ETS in August 2021. When Defendants' attorney responded on Defendants' behalf, rather than removing their unauthorized uses of the Photograph or making any other settlement offer, Defendants instead doubled down on their usage of the Photograph, claiming that the Photograph was not protectable by copyright. (SOF ¶ 26.) Plaintiff's follow-up attempts went without response, and Plaintiff filed suit. (SOF ¶ 28.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any, show that there is no genuine issue as to any material fact on the issue for which summary judgment is sought, such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

2

586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . ." *Anderson*, 477 U.S. at 252. Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Factual controversies are to be resolved in favor of the nonmovant – the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson*, 477 U.S. at 248.

### III. ARGUMENT

#### A. ETS Is Liable for Copyright Infringement

Oppenheimer has succeeded in making a *prima facie* case that ETS infringed upon Oppenheimer's copyrights in the Photograph. To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991). Oppenheimer's prompt registration of his copyright in the Photograph makes the copyright registration presumptively valid, 17 U.S.C. § 410(c), and the vast majority of the Photograph has been copied into the Infringing URLs. (*See*, Dkts. 22-1–22-6.)

##### i. Oppenheimer Owns a Valid Copyright in the Photograph.

As an initial matter, a registration with the U.S. Copyright Office made within five years of the first publication of a photograph "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). The Photograph was first published in 2012 and has been registered with the U.S. Copyright Office since that same year. (SOF ¶¶ 9–11.) This would serve to shift the burden on Defendants, and nothing provided to-date could support Defendants' argument that Oppenheimer's copyright in the Photograph is invalid.

3

Even if Oppenheimer did not have the benefit of the presumption of validity, he would still be able to prove that his copyright in the Photograph is valid. Material may be protected by copyright if it is an "original wor[k] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345.

Plaintiff has attested that he independently created the Photograph as a credentialed photographer at a performance by the Steve Miller Band. (SOF ¶ 8.) As for whether the Photograph meets the low threshold for creativity, for well over a century, photographs of real people have been deemed protectable under copyright law. *Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) (holding that a photograph of Oscar Wilde was an original work of art). While facts and ideas are not protectible subject matter, photographs are protected based on a "photographer's posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021) (internal quotations omitted), *aff'd*, No. 21-869 (U.S. May 18, 2023). Furthermore, not only are images of reality considered copyrightable subject matter, but the thickness of the protection afforded to such works has contributed to decisions rejecting application of the fair use doctrine as a defense to copyright infringement. *See id.*; *Brammer v. Violent Hues Prods.*, 922 F.3d 255, 266–67 (4th Cir. 2019) (citing *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) ("Simply because a photo documents an event does not turn a pictorial representation into a factual recitation . . . Photos that we now regard as iconic often document an event. . .")). This is true even specifically relating to concert photography. *See, e.g.*, *Philpot v. LM Commc'ns II*, No. 18-6207 (6th Cir. Sep. 9, 2019) (reversing a district court decision

4

that concert photographer was not a "prevailing party" in suit about unauthorized use of the image of Willie Nelson during a performance); *Philpot v. Lending Tree, LLC*, 3:20-cv-268-RJC-DSC (W.D.N.C. July 2, 2021) (declining to deem informational use of a concert photograph of Willie Nelson as fair use); *Philpot v. Alternet Media, Inc.*, No. 18-cv-04479-TSH, at *5 (N.D. Cal. Nov. 30, 2018) (same). Given that the Photograph meets the low threshold for originality and is fixed in a tangible medium of expression, the Photograph is copyrightable, so Oppenheimer holds a valid copyright in the Photograph.

### ii. ETS Has Copied Constituent, Original Elements of the Photograph.

Oppenheimer must also establish that ETS copied portions of the Photograph that are protectable. *Feist*, 499 U.S. at 361. This is a two-part inquiry. Not only must a plaintiff prove that a defendant actually copied the work, but "the plaintiff must also prove that the defendant's copying was wrongful – *i.e.*, that the defendant took enough of his protected expression (as opposed to unprotectable ideas, concepts, facts, etc.) to constitute unlawful appropriation of his expressive work." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 887 (7th Cir. 2021). Importantly, "a plaintiff is not required to prove that the defendant's copying was unauthorized in order to state a *prima facie* case of copyright infringement." *Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016). The defendant carries the burden of proving any potential authorization for the copying. *Id*. at 760–61.

"Copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007) (internal quotations omitted). A plaintiff is not required to prove access, however, "[i]f the 'two works are so similar as to make it highly probable that the later one is a copy of the earlier one.'" *Id*. (quoting *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997)). "The more a work is both like an already copyrighted work *and* . . .

unlike anything that is in the public domain, the less likely it is to be an independent creation." *Ty, Inc.*, 132 F.3d at 1169 (emphasis in original).

It is appropriate for judges to determine whether and to what extent two works are similar at the summary judgment phase. *See JCW Investments*, 482 F.3d at 917 ("We have no trouble concluding that the district court properly granted partial summary judgment to [plaintiff] on the issue of liability for copyright infringement."). Courts in the Seventh Circuit apply the ordinary observer test to assess substantial similarity, determining "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508–09 (7th Cir. 1994).

A cursory analysis of the Photograph and the images displayed on the Websites immediately leads to a definitive conclusion that the Websites contain a cropped version of the Photograph created by Oppenheimer. (*Compare* Dkt. 22-3 *with* Dkt. 22-4, 22-5, and 22-6; *see also*, SOF ¶¶ 17–22.) The similarities are striking, and no reasonable person could conclude that they are different photographs. Though Oppenheimer does not have the burden of proving that the uses are unauthorized, Defendants have admitted that they have not obtained Oppenheimer's permission to use the Photograph. (SOF ¶ 29.) Furthermore, when ETS's attorney responded to Oppenheimer's initial demand letter, ETS did not allege that the images used on the Websites were not the Photograph. Instead, ETS's attorney simply asserted that the Photograph was not protectable by copyright. (SOF ¶ 26; Dkt. 22-7). Oppenheimer has met his burden in proving that ETS has copied protectable aspects of the Photograph.

### B. Volpone Has Vicariously Infringed Oppenheimer's Rights in the Photograph.

As long as a direct infringement exists by a third party, a defendant is vicariously liable for copyright infringement if the defendant at all material times possessed the right and ability to

supervise the infringing activity and also has a direct financial interest in such activities. *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, at *18 (N.D. Ill. July 14, 2014). Individuals who are principals of closely held companies have the requisite right and ability to supervise the infringing conduct, as well as a direct financial interest in the infringing activity. *See, e.g., Broad. Music, Inc. v. M.R.T.P., Inc.*, No. 12-CV-7339, at *10 (N.D. Ill. June 26, 2014) (finding a president of an infringing business vicariously liable for the infringement); *Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, at *1 (N.D. Ill. Jan. 19, 2001) (same).

Defendants have admitted that, as a member and manager of ETS, Volpone was the sole owner and sole decisionmaker on behalf of ETS. (SOF ¶¶ 14, 30.) This means that Volpone had a right and ability to supervise ETS's activities, including the activities that resulted in infringement of Oppenheimer's rights. Defendants further explicitly admit that Volpone had a financial interest in the content of ETS's websites. (SOF ¶ 31.) As a result, there is no genuine issue of material fact as to whether Volpone had a right and ability to supervise ETS, nor as to whether Volpone had a direct financial interest in ETS's infringing activity. Volpone is himself vicariously liable for infringing acts committed by ETS.

### C. Volpone Has Contributorily Infringed Plaintiff's Rights in the Photograph.

Volpone is also personally liable under the doctrine of contributory copyright infringement. "To support a claim for contributory copyright infringement, a plaintiff must demonstrate (1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement." *Monotype Imaging, Inc. v. Bitstream Inc.*, 376 F. Supp. 2d 877, 883 (N.D. Ill. 2005). Same as with vicarious infringement, an individual officer of a primary infringer can be found contributorily liable for the infringement. *See, e.g., Microsoft Corp. v. Logical Choice Computers, Inc.*, No. 99 C 1300, at *1 (N.D. Ill. Jan. 19, 2001) (finding a president of an infringing business contributorily liable for the infringement).

7

As set forth above, ETS has infringed upon Oppenheimer's copyright in the Photograph and is the primary infringer in this situation. *See* § III(A), *supra*. With respect to the knowledge requirement, "[o]fficers of a company can be assumed to know of facts 'critical to a business's core operations . . .'" *In re Sears, Roebuck Co.*, Case No. 02-CV-7527, at *9 (N.D. Ill. Oct. 23, 2003) (quoting *Stavros v. Exelon Corp.*, 266 F. Supp.2d 833, 850 (N.D. Ill. 2003)). As the sole owner and sole decisionmaker of ETS, Volpone cannot shirk responsibility for infringements stemming from ETS's routine operations. ETS regularly used images on the Websites to advertise the various shows for which ETS resold tickets. (SOF ¶¶ 15–22.) ETS's publication of the Photograph on webpages for the resale of tickets to a concert falls squarely within this type of routine operation. Thus, Volpone can be deemed to have had the requisite knowledge of ETS's publication of the Photograph on ETS's webpages for purposes of contributory infringement.

Finally, because Volpone was the sole decisionmaker on behalf of ETS, Volpone materially contributed to ETS's infringing activities. (SOF ¶ 14.) More specifically, Volpone had control over ETS and ETS's policies, protocols, and content on ETS's websites, including with respect to images of performers. (SOF ¶ 32.) As a result, Volpone's conduct meets the material contribution requirement, and there are no further genuine issues of material fact with respect to the contributory copyright infringement claim.

### D. Defendants Have Violated Section 1202(b) of the Digital Millennium Copyright Act (DMCA)

Oppenheimer further has met his burden that Defendants engaged in violations of Sections 1202(b)(1) and (b)(2) of the DMCA. Section 1202(b)(1) prohibits intentional removal or alteration of any CMI, while Section 1202(b)(2) prohibits distribution or importation for distribution of CMI with knowledge that the CMI has been removed. Both sections further require knowledge or reasonable grounds for knowledge that the removal or alteration of CMI "will

induce, enable, facilitate, or conceal an infringement of any right under [the Copyright Act.]" 17 U.S.C. § 1202(b)(1)–(b)(2). This has been termed a "double scienter" requirement, with components relating to prior mental state and awareness of future impact. *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 840 (N.D. Ill. 2019).

A plaintiff can base a finding of the requisite knowledge or intent through circumstantial evidence, including by showing a defendant's "ostrich-like" business practices. *Id.* at 841–42 (citing *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)); *see also, In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law"). The sophisticated nature of a defendant's business, especially if it involves regular dealings with intellectual property matters, also supports such a finding. *GC2*, 391 F. Supp. 3d at 842. In relation to future impact, a plaintiff does not need to "demonstrate that a DMCA defendant did actually induce, enable, facilitate or conceal infringement for liability to attach." *Id.* (citing *Stevens v. Corelogic, Inc.*, 893 F.3d 648, 674 (9th Cir. 2018)). A plaintiff can satisfy its burden with respect to both layers of a defendant's knowledge or intent "by demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its action.'" *GC2*, 391 F. Supp. 3d at 841 (quoting *Stevens*, 893 F.3d at 674) (emphasis added).

As a ticket reseller business with consistent involvement in the entertainment and media industry, ETS is indeed a sophisticated party and in large part deals in intellectual property. (SOF ¶¶ 15–16.) At all relevant times, Defendants' modus operandi involved providing photographs to accompany their listings of tickets for sale. (SOF ¶¶ 17–20, 32.) The fact that this was consistent practice by Defendants is reinforced through Defendants' initial response to Oppenheimer's initial demand letter, as Defendants made clear that they viewed images of live performances to be

9

available for unfettered usage. (SOF ¶ 26.) While ETS is the direct owner of the Websites, Volpone was the primary driver of ETS's policies and protocols, including with respect to image usage. (SOF ¶ 32.) Given Defendants' experience in the entertainment industry and pattern of conduct, <u>at a minimum</u>, Defendants had reasonable grounds to know that pirating photographs off the Internet without attributing the creators of the photographs would likely serve to induce, enable, facilitate, or conceal infringement. Oppenheimer only published the Photograph with his CMI, and there were no other instances of the Photograph being published without the CMI by any other third party. (SOF ¶ 37.) The publication of the Photograph at the Infringing URLs without CMI had to have occurred as a result of Defendants' removal of Oppenheimer's CMI.

In addition, while statutory damages for copyright infringement claims stem from the number of *works* infringed, statutory damages for violating Section 1202 of the DMCA depend on the number of *violations*. 17 U.S.C. § 1203(c)(3)(B). For purposes of calculating the number of DMCA violations, breach of each provision of the DMCA is a separate violation. *GC2 Inc. v. Int'l Game Tech.*, No. 16 CV 8794, at *17 (N.D. Ill. Nov. 12, 2018) (holding that, while insertions of multiple items of false CMI serve as a single violation, this "does not necessarily preclude the possibility of violations of multiple subsections of the DMCA (*e.g.*, providing false CMI and removal of CMI) arising from a single posting."). Furthermore, <u>each digital copy</u> of the infringed work can create a separate set of violations. *See*, *GC2*, 391 F. Supp. 3d at 838.

Plaintiff has met Plaintiff's burden in proving that Defendants have committed at least six (6) violations of Section 1202(b) of the DMCA. Specifically, Plaintiff has shown that Defendants created at least one cropped version of the Photograph without Oppenheimer's CMI, and that there were five separate websites at which ETS displayed the Photograph without Oppenheimer's CMI. (SOF ¶¶ 17–22.) The initial removal of the CMI would have violated

10

Section 1202(b)(1) of the DMCA. Meanwhile, each upload of the cropped Photograph without Oppenheimer's CMI would have resulted in a separate violation of Section 1202(b)(2).

### E. Defendants' Infringements Are Willful.

"An infringement is 'willful' if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1020 (7th Cir. 1991) (emphasis added). "In assessing willfulness, the trier of fact may consider a wide range of actions on the defendant's part, such as whether the defendant ignored copyright notices and the sophistication of the infringing party." *Gonzales v. Kid Zone, LTD.*, No. 00 C 3969, 2001 WL 1329300, at *3–4 (N.D. Ill. Oct. 25, 2001); *see also*, *Castle Rock Entertainment v. Carol Publishing Group, Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (Sotomayor, D.J.), *aff'd*, 150 F.3d 132 (2d Cir. 1998) (using the sophistication of defendants as a factor to find willful infringement, including with respect to a defendant that had experience with intellectual property laws). A failure or delay in mitigating damages from infringement after receiving notice thereof can further support a finding of willful infringement. *Video Views*, 925 F.2d at 1021.

As already addressed above, Volpone acted with requisite knowledge to meet the necessary standard for contributory infringement, and both Defendants acted knowingly for purposes of the DMCA. *See* §§ III(C)–(D), *supra*. These same factors serve to support Oppenheimer's allegations of willful infringement by Defendants, along with other factors relating specifically to willfulness of infringement. ETS is deeply involved in the entertainment and media industries, and consistently uses images in its business activities. *See* § III(D), *supra*. Considering this level of sophistication, at a minimum, Defendants acted recklessly when they failed to conduct reasonable due diligence about the provenance of the Photograph. In addition, after receiving Plaintiff's initial demand letter, rather than mitigate the damages suffered by Oppenheimer by removing the

11

infringing uses of the Photograph, Defendants instead responded to Plaintiff with the objectively unreasonable position that the Photograph was not protectable by copyright, expressly declining Oppenheimer's demand to cease and desist from use of the Photograph. (SOF ¶ 26.)

### F. All of the Defendants' Affirmative Defenses Fail.

Defendants have asserted the following four "affirmative defenses" in their respective Answers: (1) failure to state a claim upon which relief may be granted, (2) plaintiff's lack of ownership of a valid copyright, (3) that the Photograph is not entitled to copyright protection, and (4) that Plaintiff's claims are barred by the statute of limitations. These defenses all fail.

#### i. Failure to State a Claim

Defendants claim that Plaintiff has not stated a claim upon which relief has been granted. Considering that this is the standard for a motion to dismiss under Rule 12(b)(6), failure to file such a motion before filing an answer obviates the defense. *See, e.g.*, *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1037 (N.D. Ill. 2013). To-date, Defendants have not provided any specificity about how or why Oppenheimer's claims would fail. Defendants did not file any motions to dismiss Plaintiff's Complaint or FAC at the pre-discovery stage. Meanwhile, as addressed previously in this Memorandum, Plaintiff has properly pleaded and supported all of his claims against the Defendants. The Court should strike Defendants' affirmative defense that Plaintiff has failed to state a claim upon which relief may be granted.

#### ii. Validity of Copyright

As another defense, Defendants claim that Plaintiff does not own a valid copyright in the Photograph. The validity of a copyright is an element of a copyright infringement claim. The Plaintiff is required to prove it. As already addressed above, Defendants cannot even begin to disprove the presumption of the validity of Oppenheimer's copyright in the Photograph. Not only

12

will Defendants be unable to meet their burden of proving this affirmative defense, but Plaintiff has actually proven that Plaintiff owns a valid copyright in the Photograph. *See* § III(A)(i), *supra*.

### iii. Protectability and Copyrightability of the Material Contained in the Photograph

Defendants allege that the Photograph is not subject to copyright protection. This too is not a standalone affirmative defense, as it relates to the elements of a copyright infringement claim. Specifically, originality is a requirement for copyrightability. As Plaintiff has already explained above, Plaintiff has met his burden that the Photograph exceeds the low threshold for originality required for copyright protection. *See* § III(A)(i), *supra*. To the extent that this defense instead relates to an alleged lack of unlawful appropriation of protectible elements, Plaintiff has proven that ETS copied the Photograph in a manner that would result in infringement. *See* § III(A)(ii), *supra*. Oppenheimer does not claim to hold a monopoly over all photographs depicting the Steve Miller Band – only over his own work, including the Photograph, which Defendants have used without Oppenheimer's permission. There is no genuine issue of material fact as to this defense.

### iv. Statute of Limitations

Pursuant to the Copyright Act, the statute of limitations expires three years after a civil copyright claim accrues. 17 U.S.C. § 507(b). The vast majority of Courts of Appeals, including the Seventh Circuit, have adopted the discovery rule for determining the accrual date for a copyright claim. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614–15 (7th Cir. 2014) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014)). Under the discovery rule, a claim accrues when a plaintiff actually discovers or reasonably should have discovered an infringement. *Chi. Bldg. Design*; 770 F.3d at 615 (citing *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004)). Constructive discovery that could initiate a statute of limitations

13

period is different from an inquiry notice standard. *Chi. Bldg. Design*, 770 F.3d at 615–16. Thus, even if "storm warnings" exist, they do not trigger the statute of limitations. *Id*.

Though he did not have an obligation to do so, Plaintiff has gone on record since the filing of the Complaint that he first "discovered" Defendants' uses of the Photograph on June 1, 2019. (*See* Dkt. 1, ¶ 23.) Plaintiff has further explained that he errs on the side of caution in stating when the claim was discovered, as June 1, 2019, was actually the date when Plaintiff's image tracking service first matched the use of the Photograph on Defendants' Websites. (SOF ¶ 35.) Plaintiff's determination that Defendants' uses were actually infringing occurred later. (SOF ¶ 36.) To ensure the timeliness of the lawsuit, however, Plaintiff treated the June 1, 2019, date as the date when he "discovered" the infringements at issue in this case. (SOF ¶ 36.) Assuming that June 1, 2019, was the actual date of discovery, the statute of limitations for Plaintiff's copyright infringement claims in this case would have run on June 1, 2022. Plaintiff initiated this litigation on May 31, 2022 – one day prior to that assumed deadline. (SOF ¶ 1.)

Under the discovery rule, it is still important to determine whether a reasonably diligent plaintiff should have uncovered the infringement prior to the date of actual discovery. Oppenheimer has consistently used an award-winning image tracking service to help identify potential infringing uses of his photographs, including specifically the Photograph. (SOF ¶ 34.) Considering that Oppenheimer has created more than 20,000 photographs, it would be unreasonable to expect him to uncover the infringement of any particular photograph outside of the mechanized process facilitated by the image tracking service to which he subscribes. Oppenheimer's image tracking service logged Defendants' uses of the Photograph on June 1, 2019. (SOF ¶ 35.) Defendants have produced no evidence that would show that Oppenheimer knew or should have known of Defendants' infringements before May 31, 2019 (*i.e.*, three years

prior to the filing of the Complaint). As such, Oppenheimer's claims are timely, and Defendants' affirmative defense relating to the statute of limitations should be stricken.

### IV. CONCLUSION.

Oppenheimer has conclusively established that – as a matter of law – (1) ETS directly infringed Oppenheimer's valid copyright in the Photograph; (2) Volpone vicariously infringed Oppenheimer's valid copyright in the Photograph; (3) Volpone contributorily infringed Oppenheimer's valid copyright in the Photograph; (4) Defendants engaged in at least six (6) violations of Section 1202(b) of the DMCA; and (5) Defendants' acted willfully in infringing Oppenheimer's copyrights. Additionally, Defendants failed to carry their burden of proof to establish that, with respect to any of the four (4) affirmative defenses asserted by Defendants, there are facts supporting such defenses. Oppenheimer is therefore entitled to summary judgment on these affirmative defenses. Oppenheimer prays that this Court GRANT Oppenheimer's Motion as set forth above, and for such relief to which Oppenheimer may otherwise be entitled.

Dated: July 10, 2023

Respectfully submitted,

DAVID GORDON OPPENHEIMER

By: ___/s/ Ilya G. Zlatkin___
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law
Tel: (312) 809-8022

*Attorney for Plaintiff David Gordon Oppenheimer*