THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>                  Plaintiff,<br><br>        v.<br><br>Event Ticket Sales, LLC and<br>Guinio W. Volpone,<br><br>                  Defendants. | Case No. 1:22-cv-02864<br><br>Dist. Judge Andrea R. Wood<br><br>Mag. Judge Sheila M. Finnegan |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VOLPONE'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff") respectfully submits this response ("Response") in opposition to Defendant Guinio W. Volpone's ("Volpone") Motion for Summary Judgment (Dkt. 38) and Volpone's memorandum in support of the motion (Dkt. 40) (such memorandum, "Volpone Motion"). In support of Oppenheimer's Response to the Volpone Motion, and pursuant to Local Rule 56.1(b)(2), Oppenheimer also submits responses to Volpone's Statement of Material Facts (Dkt. 39) (such responses, "Resp. Facts"). Oppenheimer also submits Plaintiff's Statement of Additional Material Facts ("PSAMF") in compliance with Local Rule 56.1(b)(3).

    **I.    INTRODUCTION**

      Volpone filed the Volpone Motion asserting a single argument: that Oppenheimer's claims against Volpone contained in the FAC were time-barred. Volpone claims that Oppenheimer's First Amended Complaint (Dkt. 22) ("FAC") failed to relate back to the initial filing of Oppenheimer's original complaint (Dkt. 1) ("Complaint") under Rule 15(c) of the Federal Rules of Civil Procedure. The sole issue on which the Volpone Motion hinges is whether Oppenheimer had made a "mistake" in naming defendants other than Volpone in the Complaint. (Volpone Motion at 2–3.)

In the absence of an acceptable type of mistake, Oppenheimer's amendment in the FAC to include Volpone would fail to relate back to the Complaint, which, according to Volpone, would be fatal to all of Oppenheimer's claims against Volpone.

As explained in this Response, sufficient "mistake" existed as to the proper party's identity so as to satisfy the requirements of Rule 15(c)(1)(C)(ii). Nevertheless, even if the amendment to include Volpone is deemed not to relate back to the Complaint, unresolved questions exist as to whether Oppenheimer identified or should have identified Defendants' uses as infringing before September 21, 2019 (the date three years prior to the filing of the FAC). Not in doubt, however, is that, under the separate-accrual rule for copyright infringement, Oppenheimer's claims with respect to at least one of the URLs identified in the FAC accrued less than three years prior to the filing date of the FAC. Finally, Volpone also can be found liable for infringements of the Photograph discovered after the filing of the FAC, and which would be subject to inclusion in a subsequent amended complaint. Oppenheimer asks leave from the Court to amend the FAC to include such newly uncovered infringements. FED R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any, show that there is no genuine issue as to any material fact on the issue for which summary judgment is sought, such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . ." *Anderson*, 477 U.S. at 252. Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Factual controversies are to be resolved in favor of the nonmovant – the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson*, 477 U.S. at 248.

### III. ARGUMENT

#### A. The FAC Relates Back to the Filing Date of the Complaint with Respect to Volpone

As Volpone states in the Volpone Motion, the FAC's amendment to name Volpone as a defendant can relate back to the Complaint if:

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(Volpone Motion at 3 (quoting FED. R. CIV. P. 15(c)(1)(C))). Volpone then proceeds to concede that Rule 15(c)(1)(B) was satisfied and that Volpone "received proper notice of the action and has not been prejudiced in defending it." (Volpone Motion at 3.) Volpone also acquiesces that he "should have known the action would have been brought against him individually." (*Id*.) As a result, the sole question for assessing Volpone's argument is whether Oppenheimer committed a "mistake" regarding Volpone's identity.

3

The issue is not as cut-and-dry as Volpone would like the Court to think. In 2006, the Seventh Circuit ruled in *Hall v. Norfolk Southern Railway Company* that "relation back on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant." 469 F.3d 590, 596 (7th Cir. 2006) (internal quotations omitted). This ruling seemed to definitively preclude any relation back in cases in which a plaintiff substituted a specifically named party for a previously named "John Doe" after the statute of limitations expired. Several years later, however, the U.S. Supreme Court decided *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 555–57 (2010). The *Krupski* decision, which dealt with determination of the meaning of a mistake with respect to a party other than a John Doe defendant, resulted in over a decade of inconsistency within districts in the Seventh Circuit about whether *Krupski* had effectively subrogated the so-called John Doe rule. *See, e.g.*, *Haroon v. Talbott*, No. 16-cv-04720, 2017 WL 4280980, at *7 (N.D. Ill. Sept. 27, 2017) (concluding that "inadequate knowledge can constitute a mistake"); *White v. City of Chicago*, No. 14-cv-3720, 2016 WL 4270152, at *15–17 (N.D. Ill. Aug. 15, 2016) (reasoning that *Krupski* applies in the John Doe context); *Brown v. Deleon*, No. 11 C 6292, 2013 WL 3812093, at *6 (N.D. Ill. July 18, 2013) ("*Krupski* supports that inadequate knowledge and lack of full information regarding a defendant's identity satisfies the mistake requirement for Rule 15(c)(1)(C).").

In 2021, the Seventh Circuit finally issued a ruling clarifying that *Krupski* had not obviated the John Doe rule. *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021). The *Krupski* Court had included "inadequate knowledge" as part of a larger context, in that it was "the 'wrong action' stemming from 'inadequate knowledge' that amounts to a mistake." *Herrera*, 8 F.4th at 498–99 (quoting *Krupski*, 560 U.S. at 548–49). The Seventh Circuit differentiated *Krupski* from the John Doe scenario, reasoning that naming a John Doe defendant is a "deliberate choice" and that a

plaintiff that includes a John Doe defendant does so with full awareness that they lack adequate information. *Id*.

But the Court also noted in *Herrera* that "a plaintiff's 'deliberate but mistaken choice,' . . . does not entirely foreclose an amendment from relating back." *Id*. (quoting *Krupski*, 560 U.S. at 549). "That is because 'a plaintiff might know that the prospective defendant exists but nonetheless harbor a <u>misunderstanding about his status or role</u>,' leading that plaintiff to mistakenly 'sue a different defendant based on that misimpression.'" *Herrera*, 8 F.4th at 498 (quoting *Krupski*, 560 U.S. at 549) (emphasis added). Furthermore, separate from the context surrounding inadequate knowledge, the *Herrera* court also noted that *Krupski*'s definition of mistake included "an erroneous belief" and "a state of mind not in accordance with the facts." *Herrera*, 8 F.4th at 497 (quoting *Krupski*, 560 U.S. at 548).

After the Seventh Circuit decided *Herrera*, it also distinguished John Doe placeholders from the use of code names and other alias identifiers. *Rodriguez v. McCloughen*, 49 F.4th 1120, 1123 (7th Cir. 2022). In interpreting *Krupski*, the *Rodriguez* court noted that the Supreme Court "equated 'mistake' with <u>any</u> erroneous belief." 49 F.4th at 1123 (emphasis added). Putting all of these elements together, it is then appropriate to conclude that, while making a voluntary choice to name a John Doe defendant based on inadequate knowledge would not satisfy Rule 15(c)(1)(C)(ii), if a plaintiff has some other erroneous belief or state of mind not matching the facts, then a "mistake" has indeed occurred, allowing for relation back.

Oppenheimer does not dispute that if the extent of the amendment in the FAC was to substitute Volpone for a John Doe defendant who represented the sole owner and sole manager of ETS, then there would not have been a mistake that would allow for relation back to the date of the Complaint, per *Herrera*. That is not the case here, however. True, there is no denying that

5

Oppenheimer used the words "John Does" and "Doe Defendants" in the Complaint, but the inquiry cannot stop there. More specifically, the Complaint listed "John Does <u>1-10 doing business as 'SecureBoxOffice.com' and 'Box-OfficeTickets.com'</u>" as defendants in addition to ETS. (Resp. Facts ¶ 5 (emphasis added).) Oppenheimer subsequently expanded on that identification, claiming that the defendants identified as "Doe Defendants" were "individuals and other entities involved in the ownership and/or management of the websites SecureBoxOffice.com and Box-OfficeTickets.com." (*Id*.) This evidences multiple erroneous beliefs and state of mind as to the number, entity type, and role of the unnamed defendants. Specifically, Oppenheimer believed that there were multiple unknown defendants, that these multiple defendants may have included at least some non-natural persons, and that these persons owned the websites. Each of these errors, by itself, is sufficient to meet the requirements of Rule 15(c)(1)(C) to permit relation back.

**First**, there was a mistake as to the number of defendants. In the Complaint, Oppenheimer referenced ten John Does in the caption and then referenced multiple Doe Defendants throughout the Complaint. This belief was incorrect, in that Volpone turned out to be just a single individual. In *Herrera*, the plaintiff had filed suit against three John Doe police officers. Herrera then amended the complaint twice to add the three police officers as their names came out in discovery. *Herrera*, 8 F.4th at 495. The number of Doe Defendants is not just a pedantic question. If it turned out that there were many Doe Defendants, or if it turned out that ETS was not a closely held company, that would have likely doomed Oppenheimer's indirect copyright infringement claims. One of the main reasons why Oppenheimer's own motion for partial summary judgment has merit with respect to indirect liability is because it turned out that there was only a single owner and decisionmaker of ETS.

**Second**, Oppenheimer believed that the Doe Defendants may be non-natural persons. "[A] 'wrong action' usually means the plaintiff sues the wrong person or entity." *Hollis v. The City of Chi.*, 21 C 1956, at *3 (N.D. Ill. Apr. 11, 2022) (citing *Herrera* and noting that this was the basis for the Supreme Court's ruling in *Krupski*); *see also*, *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) ("a legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15").

**Third, and most importantly**, there was a mistake about the <u>role</u> of the Doe Defendants and, by extension, of Volpone. As noted above, this was explicitly named in *Herrera* as a reason why a deliberate choice may nevertheless be viewed as a mistake. *Herrera*, 8 F.4th at 498 ("'a plaintiff might know that the prospective defendant exists but nonetheless harbor a <u>misunderstanding about his status or role</u>,' leading that plaintiff to mistakenly 'sue a different defendant based on that misimpression.'") (quoting *Krupski*, 560 U.S. at 549) (emphasis added).

The Complaint clearly shows that Oppenheimer believed that the Doe Defendants were transacting business as "SecureBoxOffice.com" and "Box-OfficeTickets.com." Moreover, it was not clear whether either of the websites were owned by the same party or by separate parties. After the parties' pleadings and discovery proceedings, it became clear that ETS is the sole owner and manager of the websites. <u>Volpone, on the other hand, is neither the owner nor the operator of the websites</u>. Instead, Volpone owns and manages <u>ETS</u>. But he is not "doing business as" either of the websites.

Thus, had Oppenheimer sued a single "John Doe" defendant to represent the natural person owning and managing ETS, then there would not have been any "wrong action" or "erroneous belief" (*i.e.*, "mistake") by Oppenheimer. Oppenheimer's "mistake" was not in the naming of defendants as "John Doe," but rather in naming multiple defendants, each of whom may have been

7

business entities, and who were doing business as "SecureBoxOffice.com" and "Box-OfficeTickets.com." Akin to the code names in *Rodriguez*, if Oppenheimer had captioned the suit simply with defendants "SecureBoxOffice.com" and "Box-OfficeTickets.com," there would not be any question that an amendment adding Volpone as a party to the suit was subject to the relation-back doctrine. This would have still been a deliberate choice with the same erroneous beliefs. The filing of the FAC resolved these erroneous beliefs, and therefore the addition of Volpone can relate back to the filing date of the Complaint.

### B. Genuine issues of material fact exist as to whether Oppenheimer first realized that ETS's uses were infringing before September 21, 2019.

Since the statute of limitations is an affirmative defense, Volpone has the burden of proving the basis under which the Court should dismiss each of Oppenheimer's claims against Volpone. *See* FED. R. CIV. P. 8(c)(1). Even if Oppenheimer's claims against Volpone in the FAC are not permitted to relate back to the Complaint, Volpone has nevertheless still failed to meet Volpone's burden that the claims against him in the FAC are time-barred.

Volpone properly acknowledges that, within the Seventh Circuit, the discovery rule governs accrual of copyright claims. (Volpone Motion at 2.) Under the discovery rule, a claim accrues when a plaintiff actually discovers or reasonably should have discovered an infringement. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014) (citing *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004)). Constructive discovery that could initiate a statute of limitations period is different from an inquiry notice standard. *Chi. Bldg. Design*, 770 F.3d at 615–16. Thus, even if "storm warnings" exist, they do not trigger the statute of limitations. *Id*.

It is important to distinguish between discovery of <u>any use of a work</u> from discovery of an <u>infringement</u>. *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) ("the copyright statute of

8

limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was <u>violating his rights</u>") (emphasis added). A plaintiff can be aware that a future defendant is using the plaintiff's work, but until the plaintiff knows or should have known that the defendant's use is *infringing*, the copyright claim has not accrued. *See Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 887–88 (N.D. Ill. 2014) (finding that statute of limitations was not triggered when the infringer notified copyright owner of an issue overrun in violation of a licensing agreement after a 20-year working relationship).

Over his career as a photographer, Oppenheimer has personally created over 20,000 images that he makes available to the public for licensing and for purchasing prints. (PSAMF ¶ 1.) It is impossible to track potential infringements of any single work in real time, as even with the use of third-party software, Oppenheimer has to investigate each image on an individual basis. (PSAMF ¶ 2.) Upon receiving a list of uses of his works through an image tracking service, Oppenheimer first has to determine whether any particular reported use is an actual infringement before proceeding with any copyright enforcement. (PSAMF ¶ 3.)

It is true that Oppenheimer has pleaded that he "first discovered Defendants' uses of the Photograph on June 1, 2019." As Oppenheimer has attested, this date is based on the fact that Pixsy, the image tracking software service to which Oppenheimer subscribes, first found a match of the Photograph being used at ETS's websites on that date. (PSAMF ¶ 4.) Oppenheimer further does not contest that he first noticed the Pixsy search results on June 8, 2019. (PSAMF ¶ 5.) Oppenheimer has explicitly stated, however, that before identifying a particular use as *infringing*, he conducts a reasonable amount of due diligence, including to seek advice of qualified intellectual property counsel, as to whether a particular use is actually infringing, or whether the use may be authorized by agreement or law. (PSAMF ¶ 6.)

9

This means that, in addition to carefully checking his records to determine whether there may have been some license agreement with respect to the Photograph, Oppenheimer also had to determine whether Defendants' uses of the Photograph were actually authorized by operation of law. For example, prior to sending a DMCA takedown notice, a copyright owner is required to proactively determine in good faith whether the fair use doctrine may authorize a particular use. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2015); *see also*, *In re DMCA Section 512h Subpoena to Youtube Google, Inc.*, 581 F. Supp. 3d 509, 519 (S.D.N.Y. 2022). This is a fact-specific analysis, and various uses by the exact same party of the exact same work may be permitted in one context but not in another. *Andy Warhol Found. for the Visual Arts v. Goldsmith*, No. 21-869, at *51 (U.S. May 18, 2023) ("our only point today is that, while the [secondary user] may often have a fair-use defense for [the secondary user's] work, that does not mean it always will. Under the law Congress has given us, each challenged use must be assessed on its own terms.") (GORSUCH J., *concurring*). As a result, Oppenheimer was obligated to conduct further diligence to determine whether Defendants' uses of the Photograph were actually infringing. He would have been derelict in his obligations if he had not done so first.

Therefore, as Oppenheimer has declared, his determination that the Defendants' uses of the Photograph were *infringing* occurred at some point between Pixsy's first logging of the Photograph being used at ETS's websites and his attorney's sending of an initial demand letter to ETS on August 23, 2021. (Resp. Fact ¶ 2.) For Oppenheimer's claims against Volpone to be time-barred, Oppenheimer would have had to have actually or constructively determined the uses at the Websites as <u>infringing</u> before September 21, 2019 (*i.e.*, three years prior to the filing of the FAC). A reasonable jury could determine that Oppenheimer was reasonably diligent in taking around three-and-a-half months from early June until late September 2019 to conduct research and consult

with lawyers before finally determining ETS's uses as infringing. At a minimum, there is a genuine dispute as to whether the time taken by Oppenheimer to determine the use as infringing would be reasonable. Under the summary judgment standard, which requires making all reasonable inferences in the nonmovant's favor, the Volpone Motion must be denied on that fact alone.

### C. Oppenheimer's Claims with Respect to At Least One Infringing URL Accrued Within Three Years of the FAC's Filing

In addition to the discovery rule, statute of limitations analysis for copyright infringement claims requires an assessment of the separate-accrual rule, pursuant to which a new statute of limitations period begins with each separate violation. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014); *Chi. Bldg. Design*, 770 F.3d at 614. "Each time an infringing work is reproduced or distributed, the infringer commits a new wrong." *Petrella*, 572 U.S. 663 at 671. Thus, each URL at which ETS reproduced or displayed the Photograph was a separate violation with its own statute of limitations period.[1] Combining the separate-accrual rule with the discovery rule, each separate limitations period would have started running on the date that Oppenheimer discovered or should have discovered a particular infringement. *See Chi. Bldg. Design*, 770 F.3d at 614–15.

Volpone concedes that, in terms of what Volpone is able to prove, the earliest possible discovery date that a jury could consider is June 1, 2019. (Volpone Motion at 1.) As discussed above, a conclusion that any of Oppenheimer's claims accrued on June 1, 2019, would require the Court to view the evidence in a light that is least favorable to Oppenheimer. *See* § III(B), *supra*.

---

[1] The separate-accrual rule should not be conflated with the "continuing violation" doctrine. *Petrella*, 572 U.S. at 671 n.6 ("Separately accruing harm should not be confused with harm from past violations that are continuing."). To be clear, Oppenheimer does not claim that the Photograph's continued display at multiple infringing URLs well within three years of the FAC's filing date in any way extends the applicable statute of limitations for any violation.

Even if this less-than-favorable standard is applied, the statute of limitations period for at least one of the URLs specified in the FAC did not expire prior to September 21, 2022. In the FAC, same as in the Complaint, Oppenheimer cited five different infringing URLs. (PSAMF ¶ 7.) Of these five URLs, at least one was discovered by Oppenheimer after September 21, 2019 – the date that is exactly three years prior to the filing date for the FAC. The screenshot of the BOT URL shows that the earliest date when the screenshot was captured using the Internet Wayback Machine was February 26, 2020. (PSAMF ¶ 8.) This is supported by the fact that the BOT URL is not included in the Pixsy search results. (PSAMF ¶ 9.)

The fact that Pixsy first logged the appearance of the Photograph at the SBO URL, the SBO Image URL, and the Second BOT Image URL on June 1, 2019, *might* be used to suggest that Oppenheimer's claims against Volpone would have accrued on that same day with respect to those particular URLs. (Resp. Fact ¶ 2.) The same cannot be said about the First BOT Image URL and the BOT URL. As the screen capture for the First BOT Image URL shows, the first time it was captured was on July 17, 2019. (PSAMF ¶ 10.) If it is assumed that that was the date when Oppenheimer not only first saw the use of the Photograph at the First BOT Image URL but also realized that it was infringing, then the claim for the First BOT Image URL would have still accrued more than three years before the filing date of the FAC.

The screenshot of the BOT URL, however, shows that the first capture of it occurred on February 26, 2020. (PSAMF ¶ 11.) This date is less than three years prior to the filing of the FAC on September 21, 2022. Even if it is assumed that Oppenheimer determined that the Photograph was infringed upon immediately upon seeing the BOT URL – a presumption to which Volpone is not entitled as the movant for summary judgment – the statute of limitations for the BOT URL still would not have expired by the time the FAC was filed. Thus, because each separate violation by

ETS would serve as an independent basis for Oppenheimer's claims against ETS, Volpone would be vicariously and contributorily liable for each of those separate violations. The same would apply with each DMCA violation.

### D. After filing the FAC and beginning discovery, Oppenheimer discovered additional infringements for which Volpone will be liable.

As noted above, Oppenheimer's claims against Volpone are not time-barred with respect to at least one infringement asserted in the FAC. *See* § III(C), *supra*. The same principles that would create a separate statute of limitations period upon discovery of the BOT URL similarly would create separate limitations periods for two additional URLs, of which Oppenheimer was not aware prior to the filing of the Complaint and the FAC. Specifically, the following URLs were not listed in either the Complaint or the FAC as infringing URLs:

- https://www.secureboxoffice.com/steve-miller-band-tickets-816/performer ("New SBO URL") (PSAMF ¶ 12.)

- https://res.cloudinary.com/hqyhthn6m/image/upload/banners/performers/816.jpg ("New Source URL") (PSAMF ¶ 13.)

As a result of this lawsuit, Defendants reformatted their website in a manner that created a new Steve Miller Band ticket resale listing page at the New SBO URL. (PSAMF ¶ 14.) Meanwhile, even though the New Source URL's relation to the New SBO URL is not obvious on its face, a look at the source code for the New SBO URL reveals that the New Source URL was indeed tied directly to the New SBO URL. (PSAMF ¶ 15.) This means that the unauthorized usage of the Photograph at the New Source URL was also caused by ETS, and for which Volpone would be at least indirectly liable. The Wayback Machine shows the first capture of both the New SBO URL and the New Source URL as having occurred on February 1, 2023.

13

Therefore, even if Oppenheimer's claims against Volpone are time-barred with respect to the infringing URLs listed in the FAC, claims with respect to the New SBO URL and the New Source URL would be timely. Oppenheimer would seek leave to amend the FAC to include the two additional infringements under Rule 15(a)(2) ("The court should freely give leave when justice so requires."). Such amendment would put the nail in the coffin of Volpone's statute of limitations defense.

### IV. CONCLUSION.

Oppenheimer has shown that the claims against Volpone in the FAC properly relate back to the filing of the Complaint. Oppenheimer has also shown that a genuine issue of material fact exists as to whether Oppenheimer may have first identified the infringements of the Photograph at all URLs less than three years prior to the filing date of the FAC. Further, at least one infringing URL was definitely discovered less than three years prior to the filing of the FAC, so Oppenheimer's claims against Volpone for that particular URL would not be time-barred. Oppenheimer requests that this Court deny Volpone's Motion for Summary Judgment as set forth above. Regardless of whether the Court ultimately deems that any of Oppenheimer's claims in the FAC against Volpone are time-barred, Oppenheimer requests leave to amend the FAC to include the separately accruing infringements that were discovered in 2023.

Dated: July 28, 2023

        Respectfully submitted,

        DAVID GORDON OPPENHEIMER

        By: \_\_\_\_/s/ Ilya G. Zlatkin_____
        Ilya G. Zlatkin (ARDC No. 6314344)
        ZLATKIN CANN ENTERTAINMENT
        4245 North Knox Avenue
        Chicago, Illinois 60641
        Email: ilya@zce.law
        Tel: (312) 809-8022

        *Attorney for Plaintiff David Gordon Oppenheimer*