THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>Plaintiff,<br><br>v.<br><br>Event Ticket Sales, LLC and<br>Guinio W. Volpone,<br><br>Defendants. | Case No. 1:22-cv-02864<br><br>Dist. Judge Andrea R. Wood<br><br>Mag. Judge Sheila M. Finnegan |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff") respectfully submits this reply brief ("Reply") in support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") (Dkt. 41) with respect to the following issues: (1) copyright infringement by Defendant Event Ticket Sales, LLC ("ETS"), (2) vicarious copyright infringement by Defendant Guinio W. Volpone ("Volpone" and, together with ETS, "Defendants"), (3) contributory copyright infringement by Volpone, (4) violations of Section 1202(b) of the Digital Millennium Copyright Act ("DMCA") by both Defendants, (5) the willfulness of Defendants' infringements; and (6) all of the affirmative defenses asserted by the Defendants. After Defendants' submission of Defendants' response brief ("Response" or "Def. Resp.") and responses ("Def. LR 56.1(b)(2) Stmt.") to the Plaintiff's Statement of Material Facts, it is evident that there is no genuine issue of material fact regarding any of the issues for which Plaintiff is seeking summary judgment.

I. **LEGAL STANDARD AND ADMISSIBILITY OF EVIDENCE**

The parties are in agreement regarding the standard for summary judgment motions. Under this standard, material facts are those that "might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants' objections with respect to materiality of various facts do not help Defendants. These objections do not deny the truth of the facts presented. Just because Defendants do not view certain facts as material does not mean that Oppenheimer is wrong in presenting them for the Court's consideration as facts that may be material. While the Court must draw all reasonable inferences in Defendants' favor on this Motion, the Court is not required "to stretch existing evidence to reach conclusions or bolster arguments it could not otherwise support." *Frost Nat. Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 868 (7th Cir. 2001).

Defendants also attack the admissibility of the evidence presented by Oppenheimer. Specifically, Defendants object to the use of the internet screenshots presented by Oppenheimer, arguing that such screenshots are inadmissible hearsay. Screenshots are admissible when they are properly authenticated by a witness with personal knowledge of a screenshot, which can be accomplished by an affidavit or declaration. *See Luxottica Grp. S. P.A. v. Zhao*, No. 16-CV-7988, at *8 (N.D. Ill. Mar. 17, 2017). While Oppenheimer incorporated several exhibits through the declaration that he submitted in support of his Motion (Dkt. 43-1), Oppenheimer submits an additional declaration with this Reply to authenticate certain screenshots. This is appropriate, because when evidentiary objections are raised by the party opposing summary judgment, the movant may submit additional materials to support evidence provided with the motion. *Fenje v. Feld*, 301 F. Supp. 2d 781, 810-11 (N.D. Ill. 2003) ("There is no rule preventing a party moving for summary judgment from responding to evidentiary objections in its reply or even from providing additional foundation materials with the reply."); *see also*, *RBS Citizens v. Ramzanali*, Case. No. 09-CV-05248, at *2 (N.D. Ill. June 29, 2011) (denying motion to strike a reply brief and additional affidavits that rectified evidentiary issues).

It is also worth emphasizing that Defendants have admitted that copies of the Photograph displayed on various screenshots presented by Oppenheimer was the same image that appeared on ETS's websites. As a result, the sole issue with respect to use of screenshots of the Photograph's appearance are with respect to the dates on which various archival services may have captured an image.

II. ARGUMENT

A. ETS Is Liable for Copyright Infringement

In Defendants' Response, Defendants effectively admit that Oppenheimer has met both elements necessary to make a prima facie case of copyright infringement. Defendants cite to the same case law as Oppenheimer that, to establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361 (1991). Defendants then proceed to admit that Oppenheimer has a valid copyright, as evidenced by Oppenheimer's certificate of registration. (Def. Resp. at 6.) With respect to the copying element, Defendants also "do not dispute that the image at issue appeared on defendant Event Ticket Sales LLC's website." (*Id*.) The aspect with respect to infringement that Defendants oppose is that there was any copying of protectable elements.

Defendants do not provide a single case relating to photography where use of the exact same photograph was deemed not to meet the elements necessary for copyright infringement. In fact, they provide multiple cases where photographs were deemed protectable despite their mundane subject matter. (*See* Def. Resp. at 4 (citing *Maui Jim v. Smartbuy Guru Enters.*, 459 F. Supp. 3d 1058 (N.D. Ill. 2020); *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-427, 2014 WL 11320708, at *9 (S.D. Ohio 2014)).).

3

Defendants cite several cases standing for the proposition that a photographer cannot monopolize particular poses. (*See* Def. Resp. at 5.) These cases cannot help Defendants, because in each of those cases the alleged infringers created their own photographs, incorporating the poses from the prior works. In none of those cases were the actual preexisting photographs published by the alleged infringers. As noted above, Defendants have admitted that it is in fact the Photograph that appears on ETS's websites.

In a position that seems to attack the entire industry of concert photography, Defendants allege that the Photograph cannot be protected because Oppenheimer simply "took" a photograph by pressing a button on a digital camera, as opposed to meeting some more stringent standard for creativity. Setting aside the fact that this position is a nonstarter with respect to photography in general, Defendants also explicitly cite to cause law that "edit[ing] the pictures for size, color, and clarity" is sufficient to meet the low threshold for originality. (Def. Resp. at 4 (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 760 (6th Cir. 2012).) Defendants have admitted that Oppenheimer submitted one version of the Photograph as a deposit copy to the U.S. Copyright Office and then proceeded to publish a different version on the internet. (Def. LR 56.1(b)(2) Stmt. ¶¶ 9–10.) Comparing these two versions of the Photograph is enough to determine that Oppenheimer indeed edited the Photograph, at a minimum, for size and color. The published version has been cropped and colorized, so that the colors are much more vibrant. The deposit copy also makes it clear that Oppenheimer had to navigate the crowd to capture the best possible image of the Steve Miller Band's performance. The Photograph meets the standard for copyrightability, and ETS's publication of the Photograph without authorization on its websites meets all the elements of copyright infringement.

### B. Volpone Has Vicariously Infringed Oppenheimer's Rights in the Photograph.

Defendants do not make any arguments in their Response that Oppenheimer has not made a prima facie case that Volpone is vicariously liable for ETS's infringements. As noted above, ETS committed copyright infringement. Defendants admit that Volpone is the sole owner and decisionmaker on behalf of ETS, and that Volpone had a financial interest in ETS's activities that resulted in infringement. (Def. LR 56.1(b)(2) Stmt. ¶¶ 14, 31.) As a result, there is no genuine issue of material fact as to whether Volpone is vicariously liable for infringing acts committed by ETS.

### C. Volpone Has Contributorily Infringed Plaintiff's Rights in the Photograph.

Similarly, Defendants do not make any arguments in their Response that Oppenheimer has failed to make a prima facie case that Volpone is contributorily liable for ETS's infringements. ETS committed copyright infringement, by virtue of being the sole decisionmaker on behalf of ETS, Volpone had reason to know that ETS's conduct was infringing, and he materially contributed to the infringing activities. (*See* Def. LR 56.1(b)(2) Stmt. ¶¶ 14, 26, 32.) As a result, there is no genuine issue of material fact as to whether Volpone is vicariously liable for infringing acts committed by ETS.

### D. Defendants Have Violated Section 1202(b) of the Digital Millennium Copyright Act (DMCA)

Defendants do not mention the DMCA in any capacity in their Response. There is no genuine dispute of material fact as to Oppenheimer's claims against the Defendants with respect to at least six violations of Section 1202(b) of the DMCA.

### E. Defendants' Infringements Are Willful.

Defendants do not address Oppenheimer's arguments that their infringements of the Photograph were willful. It is evident from Defendants' Response, however, that their entire

5

philosophy on the use of concert images on their websites is that such photographs are freely available for use because they are not sufficiently original to be copyrightable. This is, at a minimum, a reckless position to take, especially for a ticket reseller that is heavily involved in the entertainment and media industries. Defendants also failed to promptly mitigate the infringements when initially notified of the violations by Oppenheimer. As Oppenheimer has indicated in his Motion, recklessness is sufficient for willfulness, while sophistication of the defendant and failure to mitigate are additional factors to support willfulness.

### F. All of the Defendants' Affirmative Defenses Fail.

Defendants have asserted the following four "affirmative defenses" in their respective Answers: (1) failure to state a claim upon which relief may be granted, (2) plaintiff's lack of ownership of a valid copyright, (3) that the Photograph is not entitled to copyright protection, and (4) that Plaintiff's claims are barred by the statute of limitations. These defenses all fail.

#### i. Failure to State a Claim

As noted above, Oppenheimer has successfully made a prima facie case that ETS directly infringed Oppenheimer's rights in the Photograph, while Volpone vicariously and contributorily infringed upon Oppenheimer's rights in the Photograph. There is no issue of material fact as to this affirmative defense.

#### ii. Validity of Copyright

As noted above, Defendants admit that in their Response that Oppenheimer's copyright in the Photograph is valid. There is no issue of material fact as to this affirmative defense.

#### iii. Protectability and Copyrightability of the Material Contained in the Photograph

As Plaintiff has already explained above, in arguing that Oppenheimer's capture of the Photograph at a concert by the Steve Miller Band results in an unprotectable photograph is an

attack on the entire concert photography industry. *See* § II(A), *supra*. Nevertheless, there is sufficient admissible evidence to show that, objectively speaking, Oppenheimer made at least the types of changes to the deposit copy of the Photograph prior to publishing the Photograph, such that these contributions by themselves would be sufficient to make the Photograph protectable by copyright. Oppenheimer has repeatedly stated that he does not claim to hold a monopoly over all photographs depicting the Steve Miller Band. In fact, even if Defendants had used some other photographer's photograph from the same concert by the same band, Oppenheimer would not have any claims. But the Defendants undisputedly used Oppenheimer's Photograph. There is no genuine issue of material fact as to this defense.

### iv. Statute of Limitations

Defendants do not contest that the discovery rule properly governs accrual of copyright infringement claims. Thus, Oppenheimer's claims against the Defendants would be timely if he filed suit within three years of the date when he actually did or reasonably should have discovered a particular infringement.

Oppenheimer has presented evidence that the earliest date when he possibility could be held accountable for having seen Defendants' infringements is June 1, 2019, which is less than three years prior to the May 31, 2022, filing date of the original complaint in this case. Defendants object to such evidence, arguing that screenshots from Oppenheimer's image monitoring software are not admissible. As discussed above, screenshots are admissible when they are properly authenticated. Oppenheimer incorporated screenshots he himself took into the declaration that he submitted initially with his Motion. To the extent that such screenshots were not properly authenticated previously, Oppenheimer submits another declaration with this Reply to authenticate the screenshots more explicitly. (Oppenheimer Auth. Decl., ¶ 3.)

ETS was properly named as a defendant when Oppenheimer filed his original complaint. Because there is no material dispute of material fact with respect to whether Oppenheimer discovered ETS's uses of the Photograph less than three years prior to filing suit, summary judgment should be granted with respect to any potential use by ETS of the statute of limitations as a defense.

In addition to the discovery rule, statute of limitations analysis for copyright infringement claims requires an assessment of the separate-accrual rule, pursuant to which a new statute of limitations period begins with each separate violation. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014); *Chi. Bldg. Design*, 770 F.3d at 614. "Each time an infringing work is reproduced or distributed, the infringer commits a new wrong." *Petrella*, 572 U.S. 663 at 671. Thus, each URL at which ETS reproduced or displayed the Photograph was a separate violation with its own statute of limitations period.[1] Combining the separate-accrual rule with the discovery rule, each separate limitations period would have started running on the date that Oppenheimer discovered or should have discovered a particular infringement. *See Chi. Bldg. Design*, 770 F.3d at 614–15.

Even if it is ultimately deemed that Oppenheimer's filing of the FAC does not relate back to the filing date of the Complaint, the statute of limitations period for at least one of the URLs specified in the FAC did not expire prior to September 21, 2022. In the FAC, same as in the Complaint, Oppenheimer cited five different infringing URLs. Of these five URLs, at least one was discovered by Oppenheimer after September 21, 2019 – the date that is exactly three years prior to the filing date for the FAC. The screenshot of the BOT URL shows that the earliest date

---

[1] The separate-accrual rule should not be conflated with the "continuing violation" doctrine. *Petrella*, 572 U.S. at 671 n.6 ("Separately accruing harm should not be confused with harm from past violations that are continuing."). To be clear, Oppenheimer does not claim that the Photograph's continued display at multiple infringing URLs well within three years of the FAC's filing date in any way extends the applicable statute of limitations for any violation.

when the screenshot was captured using the Internet Wayback Machine was February 26, 2020. (Oppenheimer Auth. Decl. ¶¶ 7–8.) This is supported by the fact that the BOT URL is not included in the Pixsy search results from June 1, 2019. (Oppenheimer Auth. Decl. ¶ 4.)

Oppenheimer has attested that it is his custom and practice to log a questionable use of his work using the Internet Archive's Wayback Machine on the same date that he discovers the usage. (Oppenheimer Auth. Decl., ¶ 5.) Oppenheimer has attested that the sole capture of the BOT URL on the Wayback Machine was caused by him on February 26, 2020, because that was the first time that he saw the use of the Photograph at the BOT URL. This date is less than three years prior to the filing of the FAC on September 21, 2022. Even if it is assumed that Oppenheimer determined that the Photograph was infringed upon immediately upon seeing the BOT URL, the statute of limitations for the BOT URL still would not have expired by the time the FAC was filed. Thus, because each separate violation by ETS would serve as an independent basis for Oppenheimer's claims against ETS, Volpone would be vicariously and contributorily liable for each of those separate violations. The same would apply with each DMCA violation. As a result, there is no material issue as to whether the statute of limitations can be relied upon as a defense by either of the Defendants.

### III. CONCLUSION.

Oppenheimer has conclusively established that – as a matter of law – (1) ETS directly infringed Oppenheimer's valid copyright in the Photograph; (2) Volpone vicariously infringed Oppenheimer's valid copyright in the Photograph; (3) Volpone contributorily infringed Oppenheimer's valid copyright in the Photograph; (4) Defendants engaged in at least six (6) violations of Section 1202(b) of the DMCA; and (5) Defendants' acted willfully in infringing Oppenheimer's copyrights. Additionally, Defendants failed to carry their burden of proof to establish that, with respect to any of the four (4) affirmative defenses asserted by Defendants, there

are facts supporting such defenses. Oppenheimer is therefore entitled to summary judgment on these affirmative defenses. Oppenheimer requests that this Court GRANT Oppenheimer's Motion as set forth above, and for such relief to which Oppenheimer may otherwise be entitled.

Dated: August 11, 2023

Respectfully submitted,

DAVID GORDON OPPENHEIMER

By:    /s/ Ilya G. Zlatkin
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law
Tel: (312) 809-8022

*Attorney for Plaintiff David Gordon Oppenheimer*