IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>     Plaintiff,<br><br>  v.<br><br>Event Ticket Sales, LLC and<br>Guinio Volpone,<br><br>     Defendants. | Case No. 1:22-cv-02864<br><br>Dist. Judge Andrea R. Wood |

**[proposed] SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff"), by and through his attorneys, ZLATKIN CANN ENTERTAINMENT, for his Second Amended Complaint ("SAC") against Defendants Event Ticket Sales, LLC ("ETS") and Guinio Volpone ("Volpone" and, together with ETS, "Defendants"), alleges:

**NATURE OF THE ACTION**

1. This action arises under the United States Copyright Act, 17 U.S.C. § 501 *et seq.* for copyright infringement of a work previously registered with the United States Copyright Office, and under the Digital Millennium Copyright Act ("DMCA") for knowing removal or alteration of copyright management information ("CMI") and knowing distribution with CMI removed in violation of 17 U.S.C. § 1202 *et seq.*

**THE PARTIES**

2. Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3. ETS is a Nebraska limited liability company that lists its principal place of business as being located in Omaha, Nebraska. Upon information and belief, ETS owns and operates the

interactive websites (including all subpages) located at https://www.box-officetickets.com and https://www.secureboxoffice.com (such URLs, inclusive of all subpages, collectively, "Websites").

4. Upon information and belief, Defendant Volpone is the sole principal/owner of ETS and sole decisionmaker of ETS.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with Illinois, and in particular this judicial district, based on the events herein alleged, such that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, Defendants have used the Websites to target consumers in Illinois and, specifically, in this judicial district, by providing an opportunity for consumers to purchase tickets to hundreds of events occurring in this judicial district. To facilitate such activities, Defendants used Plaintiff's work to advertise multiple events occurring in Illinois, including an event occurring in this judicial district. Upon information and belief, Defendants generated advertising revenue and ticket sales from persons in this judicial district. In addition, as of the date of this SAC (and at all times relevant to this case), the terms of service accessible at the URL https://www.secureboxoffice.com/Terms seek to impose application of Illinois laws as the governing law and Chicago, Illinois as the exclusive venue for binding arbitration for any disputes that users of the Websites may have against Defendants.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391.

**FACTUAL ALLEGATIONS**

8. Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

9. Oppenheimer's photographs have appeared in *inter alia* Rolling Stone, MSNBC, MTV, AOL, and FUSE. The subjects of Plaintiff's photography include President Bill Clinton, Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois.

10. Oppenheimer has over the years performed photography services through his own name as well as in the form and style of "Performance Impressions, LLC," which is a North Carolina limited liability company in good standing.

11. Oppenheimer earns his livelihood from the creation and licensing of his images to permitted third-party licensees for compensation, as well as from selling prints of his photographs.

12. Upon information and belief, the Websites have at various times been used to operate internet ticket resale marketplaces where tickets are offered for sale for events located in hundreds of locations throughout the United States of America, including in Illinois and in this judicial district.

**Oppenheimer Creates, Registers, and Publishes the Photograph**

13. In August 2012, Oppenheimer created a photograph of a performance by the Steve Miller Band as a credentialed photographer at The Biltmore Concert Series in Asheville, North Carolina ("Photograph").

14. The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph – referenced by its contents title "Steve_Miller_Band_OPP0537.jpg" – is registered with the United States Copyright

Office as part of the collection *Festival Travel and Event Photography by David Gordon Oppenheimer* under Copyright Registration Number VAu 1-135-500, bearing an October 1, 2012, effective date of registration. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit A. The deposit copy of the Photograph submitted along with the copyright application is attached hereto as Exhibit B.

15. After submitting the Photograph for registration, Plaintiff published the Photograph through the Performance Impressions, LLC website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the published version of the Photograph contained copyright management information as defined under 17 U.S.C. § 1202(c), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Photograph was published alongside the notice "© All Rights Reserved" and clicking the "Show EXIF" button made all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph is attached as Exhibit C hereto bearing this subsequently added CMI on the face of the Photograph.

16. Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

17. Since the date of creation, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to display the work publicly pursuant to 17 U.S.C. § 106.

18. Plaintiff's copyright referenced above is presently valid and subsisting, was valid and subsisting from the moment of creation, and has been valid and subsisting in all conditions precedent to the filing of this suit.

### Defendants Use the Photograph Without Authorization

19. Upon information and belief, one or more of the Defendants obtained the published version of the Photograph and caused the reproduction, distribution, and/or display of modified copies of the Photograph through at least the following URLs (collectively, "Infringing URLs"):

- https://www.box-officetickets.com/P/p-816 ("BOT URL")
- https://www.secureboxoffice.com/P/p-816 ("SBO URL")
- https://images.box-officetickets.com/artists/816.jpg ("First BOT Image URL")
- https://images.box-officetickets.com/artists-min/816.jpg ("Second BOT Image URL")
- https://images.secureboxoffice.com/artists-min/816.jpg ("SBO Image URL")
- https://www.secureboxoffice.com/steve-miller-band-tickets-816/performer ("New SBO URL")
- https://res.cloudinary.com/hqyhthn6m/image/upload/banners/performers/816.jpg ("New Source URL")

20. The BOT URL used the Photograph as a banner image to advertise the sale of tickets of Steve Miller Band performances throughout the country. The version of the Photograph reproduced, distributed, and/or displayed at the BOT URL did not contain Oppenheimer's

copyright notice watermark on the face of the Photograph and all embedded CMI was removed from its metadata. A true and correct copy of the infringing copy of the Photograph displayed at the BOT URL, as captured on February 26, 2020, is attached hereto as Exhibit D.

21. The SBO URL displayed the Photograph as a banner image to advertise the sale of tickets to Steve Miller Band performances throughout the country. The version of the Photograph displayed at the SBO URL had Oppenheimer's copyright notice watermark on the face of the Photograph removed and embedded CMI in the metadata removed. True and correct copies of the infringing displays of the Photograph at the SBO URL, as captured on June 8, 2019, and August 23, 2021, are attached hereto as Exhibit E.

22. A cropped copy of the Photograph without Oppenheimer's copyright notice watermark on the face of the Photograph and with all embedded CMI removed from its metadata was displayed at the First BOT Image URL, the Second BOT Image URL, and the SBO Image URL (collectively, "Image URLs"). Each visit to either the First BOT Image URL and the Second BOT Image URL resulted in a copy of the cropped Photograph being created on the visitor's computer. True and correct copies of the Photograph displayed at the Image URLs, as captured on various dates, is attached hereto as Exhibit F. Exhibit F includes copies of the First BOT Image URL captured on July 17, 2019, and February 26, 2020, Second BOT Image URL captured on July 30, 2020, and October 7, 2020, and SBO Image URL captured on September 30, 2021, and May 31, 2022.

23. To help monitor uses of Plaintiff's intellectual property, Plaintiff subscribes to the image tracking software service Pixsy.

24. On or around December 28, 2017, Plaintiff uploaded some of his photographs, including the Photograph, for tracking by Pixsy.

25. On or around June 1, 2019, Pixsy logged matches of the Photograph at the URL https://www.secureboxoffice.com/E/e-3437129/v-8181, the Second BOT Image URL, and the SBO Image URL.

26. On or around June 8, 2019, Plaintiff first noticed the Pixsy results from June 1, 2019.

27. On or around June 8, 2019, using, *inter alia*, the Internet Archive's Wayback Machine, Plaintiff caused the capture of screenshots of the uses of the Photograph at the SBO URL, the Second BOT Image URL, and the SBO Image URL.

28. On or around July 17, 2019, Plaintiff first noticed the use of the Photograph at the First BOT Image URL and caused the capture of such use through, *inter alia*, a screenshot using the Internet Archive's Wayback Machine.

29. On or around February 26, 2020, Plaintiff first noticed the use of the Photograph at the BOT URL and caused the capture of such use through, *inter alia*, a screenshot using the Internet Archive's Wayback Machine.

30. At some point between Oppenheimer's discovery of Defendants' infringement and October 7, 2020, the Photograph ceased being displayed at the BOT URL. Around the same time, attempts to access Box-OfficeTickets.com began to redirect to SecureBoxOffice.com.

31. Neither of the Websites contained any information about the parties owning or operating the Websites. While the domain ownership record of SecureBoxOffice.com was kept private, Oppenheimer was able to determine that ETS was the owner of the Box-OfficeTickets.com domain through a search of records contained on WhoIs.com.

32. On August 23, 2021, Oppenheimer, through his attorneys, sent notices of copyright infringement to ETS and SecureBoxOffice.com. Specifically, Oppenheimer's attorneys sent

demand letters to ETS's registered agent in Nebraska, and to the address in Dover, Delaware that was listed in the terms of service on SecureBoxOffice.com as the address to which notices of copyright infringement should be sent.

33. On September 10, 2021, the registered agent of ETS, who is also an attorney licensed in Nebraska, California, and Nevada, responded to Oppenheimer's attorneys, claiming to represent "the company owning and operating Secureboxoffice.com." The attorney stated that the Photograph "does not appear protectable by copyright . . . . The demands outlined in your correspondence are denied." A true and correct copy of this correspondence is attached hereto as Exhibit G.

34. On September 16, 2021, Oppenheimer's attorney responded to the September 10 response from the attorney of the owner-operator of SecureBoxOffice.com, providing ample legal authority for why the Photograph was protected by copyright, and renewing the demands contained in the initial notice of infringement, along with a monetary demand to settle the matter.

35. The Photograph remained displayed online with its CMI removed at the SBO URL and at least on the First BOT Image URL at least as recently as September 24, 2021. (The Photograph remained displayed online with its CMI removed at the SBO Image URL as of the date of filing of the First Amended Complaint in this case.)

36. No response was received to the September 16, 2021, follow-up letter sent by Oppenheimer's attorney, nor to a subsequent follow-up email sent by Oppenheimer's attorney on April 22, 2022.

37. On or around February 1, 2023, Plaintiff first noticed the use of the Photograph at the New SBO URL and the New Source URL. Plaintiff caused the capture of screenshots of the uses of the Photograph at the New SBO URL and the New Source URL through, *inter alia*, Internet

Archive's Wayback Machine and the online service AwesomeScreenshot. Plaintiff was able to determine that the New Source URL was connected to the New SBO URL by reviewing the source code of the New SBO URL. A true and correct copy of the infringing copies of the Photograph displayed at the New SBO URL and the New Source URL, as captured on February 1, 2023, are attached hereto as Exhibit H.

### FIRST CLAIM FOR RELIEF
### Copyright Infringement Under 17 U.S.C. § 501
### (Against All Defendants)

38. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this SAC.

39. Plaintiff owns the exclusive rights to the copyrighted Photograph.

40. Upon information and belief, one or more of the Defendants published, copied, and displayed the Photograph at each of the Infringing URLs.

41. Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

42. Defendants acted with willful disregard of the laws protecting Plaintiff's copyright.

43. Defendants infringed Plaintiff copyright in the Photograph in violation of 17 U.S.C. § 501.

44. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable.

45. Plaintiff is informed, believes, and thereon alleges that the Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from the Photograph.

46. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photograph in an

amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

47. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

<b><u>SECOND CLAIM FOR RELIEF</u></b><br><b><u>Vicarious Copyright Infringement</u></b><br><b><u>(In the Alternative Against Volpone)</u></b>

48. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this SAC.

49. Pleading further but without waiver of the foregoing, Oppenheimer shows that at the time ETS performed the infringing acts, Volpone was the founder, owner, member, manager, and/or other genre of principal of ETS and had caused the founding of the Websites.

50. Upon information and belief, Volpone controlled nearly all decisions relating to ETS and the Websites and was the dominant influence of ETS and the Websites. Volpone provided hands-on decision making with respect to the activities of ETS and the Websites, making most of the decisions relating to ETS and the Websites. Volpone had the right and ability to supervise and/or control the infringing conduct of ETS, and/or to stop the infringements once they began. Upon information and belief, Volpone had an obvious and direct financial interest in these infringing activities of ETS and the Websites, because ETS's use of the Photograph on the Websites advertised and promoted the goods and services of ETS, encouraging website viewers to purchase and use the goods and services offered by ETS and/or the goods and services of affiliates and/or customers of ETS. Infringement of the Photograph allowed Defendants to promote and sell more effectively ETS's and/or ETS's affiliates' and/or customers' goods and services by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing a direct

positive impact on sales and/or the brand, public image, and reputation of ETS and the Websites. Accordingly, Volpone is personally liable to Oppenheimer as a joint and/or contributory infringer or is otherwise vicariously liable for the actions of ETS.

### THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against Volpone)

51. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this SAC.

52. Alternatively, Volpone has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

53. Upon information and belief, Volpone at all relevant times were the dominant influence in ETS and the Websites. Volpone provided hands-on decision-making with respect to the activities of the entity and the Websites, set and controlled the policies and protocols of the company and the Websites, and established corporate rules and cultures which encouraged the infringing activities. Volpone therefore had the right and ability to supervise and/or control the infringing conduct of ETS – and of ETS's employees, agents, and/or servants – and/or to stop the infringements once they began, but either directly refused to exercise such rights or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same. Additionally, and upon information and belief, Volpone had an obvious and direct financial interest in the infringing activities of the company Volpone operated.

54. Accordingly, Volpone is personally liable to Oppenheimer as a contributory infringer for the infringing activities of ETS.

**FOURTH CLAIM FOR RELIEF**
**Violations of the DMCA Under Section 1202(b)**
**(Against All Defendants)**

55. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–37 of this SAC.

56. Plaintiff's published version of the Photograph contained CMI within the digital file of the Photograph, including identifying metadata and, *inter alia*, the identification of the author as "David Oppenheimer," as well as a plainly visible copyright notice stating "© 2012 David Oppenheimer" on the Photograph itself.

57. Upon information and belief, Defendants, or third parties at Defendants' direction and behest (discovery will reveal which), violated the DMCA by intentionally removing the Photograph's CMI, and distributing and displaying the Photograph with the CMI removed, having reasonable grounds to know that their actions would induce, enable, facilitate, and/or conceal their infringing activities.

58. Such actions further demonstrate Defendant's willful infringement of the Photograph.

59. The aforesaid actions, including without limitation each copy of the Photograph reproduced, distributed, and/or displayed at each of the Infringing URLs, constitute violations of Section 1202(b) of the Copyright Act. More specifically, all instances of removal or alteration of the Photograph's CMI by any of the Defendants or at any of the Defendants' behest resulted in a separate violation of Section 1202(b)(1), and each instance of display of the Photograph without CMI resulted in a separate violation of Section 1202(b)(2).

60. Upon information and belief, Defendants knew or had reasonable grounds to know that by concealing the Plaintiff's CMI, that Defendants would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiff's Photograph.

61. Upon information and belief, Defendants intentionally or knowingly concealed the Plaintiff's CMI as aforesaid, in order to conceal that Defendants' uses of the Photograph was without the authorization of Plaintiff and in violation of law.

62. As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

63. As a result of Defendants' actions with regard to the Plaintiff's CMI, Plaintiff is entitled to damages in the form of actual or statutory damages pursuant to 17 U.S.C. §§ 1203(b)(3) and 1203(c), costs pursuant to 17 U.S.C. § 1203(b)(4), reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5), a temporary and permanent injunction pursuant to 17 U.S.C. § 1203(b)(1), and the impounding, modification, or destruction of any items involved in the violation pursuant to 17 U.S.C. §§ 1203(b)(2) and 1203(b)(6).

64. Plaintiff is entitled to a separate award of damages for each violation of 17 U.S.C.§ 1202.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

1. Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, performing, or making derivative works of the Photograph;

    2. That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photograph;

    3. Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from the Defendants' acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each work infringed for Defendants' acts of copyright infringement and, in the event that the factfinder determines that Defendants' infringement was not willful, that Defendants be required to pay statutory damages up to $30,000 for each work infringed by the Defendants;

    4. Pursuant to 17 U.S.C. § 1203(c)(2), that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from any and all of the Defendants' violations of Plaintiff's rights under the DMCA; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 1203(c)(3)(B), that Plaintiff be awarded the maximum statutory damages of $25,000 for each individual violation of the DMCA;

    5. Pursuant to 17 U.S.C. §§ 505 and 1203(b)(4) – (5), Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

    6. Such other and further relief as the Court shall find just and proper.

Dated: September 7, 2023

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: ___/s/ Ilya G. Zlatkin_____
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorney for Plaintiff David Gordon Oppenheimer*