IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GORDON OPPENHEIMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-02864 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| EVENT TICKET SALES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Gordon Oppenheimer ("Oppenheimer"), a professional photographer, filed this lawsuit against Defendant Event Ticket Sales, LLC ("ETS") and its owner Defendant Guinio Volpone ("Volpone") after Oppenheimer's copyrighted photograph appeared on several of Defendants' ticket sales websites without authorization or copyright management information ("CMI"). Oppenheimer asserts that Defendants infringed on his copyright in violation of 17 U.S.C. § 501 and removed CMI in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b). Now before the Court are Volpone and Oppenheimer's motions for summary judgment. Volpone seeks summary judgment based on a statute of limitations defense. (Dkt. No. 38.) With his cross-motion for partial summary judgment, Oppenheimer asks the Court to find Defendants liable for willful copyright infringement and violations of the DMCA and, moreover, hold that Defendants' affirmative defenses fail as a matter of law. (Dkt. No. 41.) For the reasons that follow, both motions are granted in part and denied in part.

**BACKGROUND**

The following facts are undisputed unless otherwise noted.

Oppenheimer is a professional photographer. (Def. Resp. to Pl.'s Statement of Additional Material Facts ("DRPSAF") ¶ 1, Dkt. No. 52.) ETS is a ticket sales organization that markets events on internet websites. (Def. Resp. to Pl.'s Statement of Material Facts ("DRPSF") ¶ 16, Dkt. No. 46.) As ETS's sole owner, Volpone controls its policies and retains a financial interest in sales generated by its websites. (*Id.* ¶¶ 14, 31–32.)

This case concerns a photograph ("Photograph") that Oppenheimer took of the Steve Miller Band during their performance in Asheville, North Carolina in August 2012. (*Id.* ¶ 8.) The Photograph depicts three musicians performing on stage. (Pl.'s Statement of Facts, Ex. C, Dkt. No. 43.) In October 2012, Oppenheimer obtained a copyright registration from the U.S. Copyright Office for a collection of images that included the Photograph. (DRPSF ¶ 9.) Soon after, Oppenheimer published an edited version of the Photograph online and included in each publication CMI, such as embedded metadata and a visible watermark that read "© 2012 David Oppenheimer." (*Id.* ¶¶ 10–11.)

To identify copyright infringement, Oppenheimer subscribes to an image-tracking service called Pixsy that alerts him when his photographs appear on the internet. (DRPSAF ¶¶ 1–4.) On June 1, 2019, Pixsy notified Oppenheimer that the Photograph was on display at the following URL addresses, all of which are owned and operated by ETS: https://www.secureboxoffice.com/P/p-816 ("SBO URL"); https://images.box-officetickets.com/artists-min/816.jpg ("Second BOT Image"); and https://images.secureboxoffice.com/artists-min/816.jpg ("SBO Image URL"). (*Id.* ¶ 5.) Oppenheimer did not notice the Pixsy notification until June 8, 2019, at which point he

2

conducted unspecified due diligence for an unknown amount of time to determine whether the use of his Photograph by Defendants was authorized by agreement or law. (*Id.* ¶¶ 5–6.) Later, Oppenheimer discovered other uses of his Photograph by Defendants. (*Id.* ¶¶ 10–13.) On July 17, 2019, the Photograph appeared at https://images.box-officetickets.com/artists/816.jpg ("First BOT Image URL"); on February 26, 2020, it appeared at https://www.box-officetickets.com/P/p-816 ("BOT URL"); and finally, on February 1, 2023, it appeared at both https://www.secureboxoffice.com/steve-miller-band-tickets-816/performer ("New SBO URL") and https://res.cloudinary.com/hqyhthn6m/image/upload/banners/performers/816.jpg ("New Source URL"). (*Id.*)

In August 2021, Oppenheimer's attorney sent an initial demand letter to ETS asserting that ETS displayed the Photograph in violation of Oppenheimer's copyright. (DRPSF ¶ 26.) In response, counsel for ETS stated that the Photograph "does not appear protectable by copyright. It is a photograph taken during a stage performance. It is not an original work in its rendition, timing, or creation of the subject." (*Id.*) The parties agree that the Photograph appeared at each URL; that Defendants did not receive permission to use the Photograph; and that CMI is not displayed at any of the URLs.[1] (*Id.* ¶¶ 17–29.)

After ETS did not reply to two follow-up letters, Oppenheimer filed suit on May 31, 2022, naming as Defendants ETS and John Does 1–10 doing business as SecureBoxOffice.com and Box-OfficeTickets.com—the two websites on which the Photograph was displayed.

---

[1] As evidence of Defendants' alleged infringement, Oppenheimer submits as exhibits screenshots of the Photograph at each URL on the date it first appeared. Oppenheimer obtained the screenshots using an internet-based function that provides access to archived or deleted websites. Defendants do not dispute the content of the screenshots. As the Court explains below, however, Defendants contend that because Oppenheimer did not authenticate the screenshots, they cannot properly evince **when** the Photograph first appeared at the respective URLs.

(Compl., Dkt. No. 1.) Once Oppenheimer discovered that Volpone owned ETS, and that ETS controlled both websites, he filed a First Amended Complaint ("FAC") on September 21, 2022, replacing the John Doe Defendants with Volpone. (FAC, Dkt. No. 22.) Later, on October 26, 2023, Oppenheimer filed a Second Amended Complaint ("SAC") alleging further infringements by Defendants. (SAC, Dkt. No. 60.)

Oppenheimer asserts four claims in the SAC. He claims that Defendants willfully infringed on his copyright in violation of 17 U.S.C. § 501, that Volpone is individually liable for both vicarious and contributory copyright infringement, and that Defendants removed CMI from the Photograph in violation of the DMCA.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Mere speculation," however, "cannot be used to manufacture a genuine issue of fact." *Foster v. PNC Bank, N.A.*, 52 F.4th 315, 320 (7th Cir. 2022) (internal quotation marks omitted). At summary judgment, courts may consider "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting Fed. R. Civ. P. 56(c)). The nonmoving party receives "the benefit of conflicting evidence and reasonable inferences," *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022), a standard that

"remain[s] unchanged on cross-motions for summary judgment," *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). The Court begins by addressing Volpone's motion before turning to Oppenheimer's.

I. **Volpone's Motion**

Volpone contends that the statute of limitations bars all claims asserted against him. "Claims under the Copyright Act are subject to a three-year statute of limitations." *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 993 (7th Cir. 2016) (citing 17 U.S.C. § 507(b)). The "separate accrual" rule applies to such claims, with "each infringing act start[ing] a new limitations period." *Chi. Bldg. Design, PC v. Mongolian House, Inc.*, 770 F.3d 610, 612 (7th Cir. 2014) (internal quotation marks omitted). Thus, "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Pursuant to the discovery rule, "the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Chi. Bldg. Design*, 770 F.3d at 614 (internal quotation marks omitted). The discovery rule is distinct from "inquiry notice," which refers to "knowledge that would have led a reasonable person to start investigating the possibility that his rights had been violated." *Id.* at 615. Unlike actual or constructive discovery, inquiry notice "does not itself trigger the statute of limitations" in copyright cases. *Id.* at 616.

Oppenheimer discovered Defendants' various uses of his Photograph at different times. In June 2019, Oppenheimer discovered the SBO URL, the Second BOT Image URL, and the SBO Image URL. And in July 2019, Oppenheimer discovered the First BOT Image URL. Later, in February 2020, Oppenheimer discovered the BOT URL. And lastly, in February 2023,

Oppenheimer discovered the New SBO URL and the New Source URL. The Court begins with the 2019 discoveries before turning to the subsequent discoveries.

### A. 2019 Discoveries

Volpone contends that the limitations period began on June 1, 2019, when Pixsy notified Oppenheimer of the use of his Photograph by Defendants. Observing that Oppenheimer first named Volpone as a Defendant in the FAC on September 21, 2022, Volpone argues that claims asserted against him are barred by the three-year statute of limitations.

Oppenheimer, for his part, argues that the FAC "relates back" to the original, timely complaint filed on May 31, 2022. Pursuant to Federal Rule of Civil Procedure 15(c), an amended pleading that "relates back to the date of a timely filed original pleading. . . is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupksi v. Costa Crociere S.p.A*, 560 U.S. 538, 541 (2010). An amendment adding parties relates back when:

> (C) … Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Here, the parties' dispute focuses on Rule 15(c)(1)(C)(ii)—that is, whether Volpone knew or should have known that the action would have been brought against him but for a mistake concerning his identity. Volpone observes that Oppenheimer named "John Does 1–10 doing business as SecureBoxOffice.com and Box-OfficeTickets.com" as Defendants in the original complaint before replacing those Defendants with Volpone in the FAC. From this

6

premise, Volpone argues that relation back is improper due to the "John Doe rule," under which a plaintiff suing John Doe defendants has a "responsibility to determine the proper party to sue and to do so before the statute of limitations expires." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). Within the meaning of Rule 15(c)(1)(C)(ii), "[a] plaintiff's ignorance or misunderstanding about who is liable for his injury is not a mistake as to the defendant's identity." *Id.* When the Seventh Circuit reaffirmed the John Doe rule in *Hererra v. Cleveland*, it reasoned that "[n]aming a John Doe defendant as a nominal placeholder is not a wrong action proceeding from inadequate knowledge; it is a proper action on account of inadequate knowledge." 8 F.4th 493, 499 (7th Cir. 2021). "[S]uing a John Doe defendant" cannot constitute a mistake, the *Herrera* court explained, because it "is a conscious choice, not an inadvertent error." *Id.*

Oppenheimer admits that he replaced the John Doe Defendants with Volpone in the FAC. Nevertheless, he contends that the John Doe rule is inapposite because the original complaint contains three mistakes contemplated by Rule 15(c)(1)(C)(ii). First, Oppenheimer claims that he first sued an incorrect number of Defendants, as the FAC substituted ten John Does for a single individual defendant. Second, Oppenheimer states that, when he filed the original complaint, he believed that the John Doe Defendants were non-natural persons, arguing that this kind of mistake is within the ambit of Rule 15(c)(1)(C)(ii). Lastly, Oppenheimer contends that he incorrectly described the role of the John Doe Defendants. According to Oppenheimer, the original complaint pleads that the John Doe Defendants were transacting business as "SecureBoxOffice.com" and "Box-OfficeTickets.com," whereas the FAC corrects this apparent mistake with its assertion that ETS owns the websites and that Volpone controls ETS.

7

*Herrera*, however, is clear: "Naming a John Doe defendant as a nominal placeholder" is not a mistake under Rule 15(c)(1)(C)(ii). *Id.* None of Oppenheimer's arguments overcome this rule. Oppenheimer cites no caselaw in support of his theory that identifying other purported mistakes somehow avoids straightforward application of the John Doe rule. But, in any event, Oppenheimer's so-called mistakes are not mistakes at all. First, Oppenheimer did not truly confuse the number of Defendants involved in this case. Oppenheimer's original complaint named "John Does 1–10" as a placeholder for one or more Defendants. And, with the FAC, Oppenheimer replaced those John Doe Defendants with a single individual—a number clearly within his initial range. Second, although Oppenheimer now insists he believed that the John Doe Defendants were non-natural persons, the original complaint indicates otherwise. There, Oppenheimer pleaded in broad strokes that John Does 1–10 represent any and all other unidentified ***individuals***—not just entities. Lastly, Oppenheimer makes much of the fact that the original complaint does not accurately describe the relationship between ETS, SecureBoxOffice.com, Box-OfficeTickets.com, and the John Doe Defendants. True, Volpone does not conduct business as either website because ETS owns both. But the original complaint anticipates as much. There, Oppenheimer pleads that the John Doe Defendants are, among other things, individuals involved in the management of the websites. By replacing John Doe with Volpone in the FAC, Oppenheimer does not correct a mistake. He instead fleshes out an assertion that was present from the start. Volpone, after all, is the sole individual involved in the management of both websites.

Oppenheimer cites *Rodriguez v. McCloughen* in support of his argument. 49 F.4th 1120 (7th Cir. 2022). That case, however, does help him. In *Rodriguez*, the Seventh Circuit held that the John Doe rule does not apply when a plaintiff sues a defendant by their code name (there,

8

"ATF UC 3749") instead of the usual John Doe placeholder. *Id.* at 1223. "Suing a particular person by a code name differs from suing John Doe," the *Rodriguez* court explained, because unlike a placeholder a code name is "specific" and "designates a real person." *Id.* Oppenheimer claims that suing "John Does 1–10 d/b/a 'SecureBoxOffice.com' and 'Box-OfficeTickets.com'" is just like suing a code name. The Court is unpersuaded. John Doe is neither specific nor denotive of a real person. By contrast, John Doe is the prototypical placeholder defendant. And as the Seventh Circuit emphasized in *Rodriguez*, "using a placeholder cannot be a 'mistake' for the purpose of Rule 15(c)(1)(C)(ii) because the plaintiff knows that no one named 'John Doe' was involved." *Id.* Here, the undisputed facts show that Oppenheimer knew that no one called John Doe was implicated in this case. Indeed, the facts show that Oppenheimer sued John Does 1–10 as nominal placeholders. *Herrera* and *Rodriguez* make clear that, when a plaintiff such as Oppenheimer has inadequate knowledge, suing John Doe is a proper action—not a "mere slip of the pen." *Herrera*, 8 F.4th at 498 (internal quotation marks omitted). Accordingly, the Court find that the FAC does not relate back to the original complaint.

In the alternative, Oppenheimer contends that his claims against Volpone are not time-barred because the FAC itself is timely. To make this argument, Oppenheimer asserts that the statute of limitations did not begin to accrue on June 1, 2019, as Volpone insists, but instead on an unspecified date on or after September 21, 2019—that is, fewer than three years before he filed the FAC.

Pursuant to the discovery rule, Oppenheimer's copyright claims started to accrue the day he learned, or should have learned as a reasonable person, that Defendants were violating his rights. Yet Oppenheimer does not state the specific date on which he discovered Defendants' infringement. Rather, he estimates in his response brief that it occurred on some unknown date

9

between September 21, 2019 at the earliest and, at the very latest, August 23, 2021, when he sent the initial demand letter to ETS. Curiously, Oppenheimer does not explain why his claims accrued on September 21 specifically and not a day earlier. Instead, he appears to hide behind the summary judgment standard, contending that a juror *could* find that he acted reasonably in failing to discover infringement until September 21 or thereafter.

Oppenheimer's attempt to reverse-engineer timeliness is flawed for several reasons. To shift the accrual date, Oppenheimer cites his own declaration, in which he states that his "determination that ETS's uses were in fact infringing occurred at some point between June 1, 2019, and August 23, 2021." (Pl.'s Statement of Facts, Oppenheimer Decl. ¶ 25, Dkt. No. 43) Explaining why this date range is so sweeping, Oppenheimer states that he conducted "additional due diligence to determine whether the uses may have been previously authorized by contract or by law. This included taking the time to confirm in [his] records whether the Photograph had been licensed previously, and to consult with [his] attorney whether any potential defenses to infringement may apply." Notably, Oppenheimer does not provide any details whatsoever concerning *when* he conducted the due diligence, *what* exactly it involved, *how long* it took, or the dates of his consultations with counsel. To be sure, "self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) (internal quotation marks omitted). But, at the same time, Oppenheimer "cannot rest upon conclusory statements in affidavits; [he] must go beyond the pleadings and support [his] contentions with proper documentary evidence." *Foster*, 52 F.4th at 320 (internal quotation marks omitted). Oppenheimer has not provided any proper documentary evidence in support of his position that it took him at least several months to determine Defendants' infringement. Instead, he rests on his belief that a juror *could* find such

10

delay reasonable. The problem is that "[m]ere speculation cannot be used to manufacture a genuine issue of fact" at summary judgment. *Id.* (internal quotation marks omitted). Yet, that is all Oppenheimer offers.

Further underscoring that Oppenheimer's argument rests on speculation alone, is that his proposed date range is belied by his own pleadings. Specifically, Oppenheimer alleges in the SAC that "[a]t some point between Oppenheimer's discovery of Defendants' infringement and October 7, 2020," the Photograph was longer displayed at a certain URL. In other words, Oppenheimer pleads that he discovered Defendants' infringement well before August 23, 2021, which he now argues is the latest possible date that the claims started to accrue.

For the aforementioned reasons, the Court finds that claims arising out of the 2019 discoveries cannot be asserted against Volpone because they are barred by the statute of limitations.

### B. Subsequent Discoveries

After the 2019 discoveries, Oppenheimer noticed that Defendants used his Photograph on February 26, 2020 (BOT URL) and, separately, on February 1, 2023 (NEW SOURCE URL and NEW SBO URL). Pursuant to the separate accrual rule, each infringing act starts a new limitations period. *Chicago Bldg. Design*, 770 F.3d at 612. Oppenheimer asserted the February 26, 2020 infringement in the FAC, which he filed on September 21, 2022. And, on October 26, 2023, Oppenheimer asserted the February 1, 2023 infringements in the SAC. On their faces, none of these infringements are barred by the three-year statute of limitations.

As evidence of Defendants' alleged infringement, Oppenheimer submits as exhibits various screenshots depicting the Photograph at each URL on the day it first appeared. To do so, Oppenheimer used the Internet Archive's Wayback Machine ("Internet Archive"), an internet-

11

based function that allows users to view archived websites even after those websites have been altered or deleted. In an effort to authenticate the screenshots, Oppenheimer provides two declarations: his own and his attorney's. Oppenheimer attests that he captured the February 26, 2020 screenshot, and Oppenheimer's attorney attests that he captured the February 1, 2023 screenshots. Although Volpone does not dispute the content of the screenshots, he contends that the screenshots are inadmissible because they are not properly authenticated by either declaration.

"[Seventh Circuit] case law makes clear that the statute of limitations is an affirmative defense and that if the evidence is inconclusive at best, the tie must go to the plaintiff." *Chatman v. Bd. of Ed. of City of Chi.*, 5 F.4th 738, 745 (7th Cir. 2021) (internal quotation marks omitted). Here, Volpone does not provide any alternative dates on which Oppenheimer's claims started to run. Put differently, Volpone adduces no actual evidence showing that Oppenheimer's claims are, in fact, untimely. Oppenheimer, for his part, declares that he noticed the infringements on dates within the limitations period. As the Court explains below, Volpone fairly questions whether the screenshots can properly evince infringement. Regardless, an attack on the authenticity of the evidence is distinct from an affirmative showing that the statute of limitations has run as a matter of law. Volpone is not entitled to summary judgment.

In sum, the Court holds that claims arising out of the 2019 discoveries cannot be asserted against Volpone because they are barred by the statute of limitations. But, with respect to the infringements discovered in 2020 and 2023, Volpone is not entitled to judgment as a matter of law based on a statute of limitations defense. Accordingly, Volpone's cross-motion for summary judgment is granted in part and denied in part.

## II. Oppenheimer's Motion for Partial Summary Judgment

With his motion for partial summary judgment, Oppenheimer asks the Court to find: (1) copyright infringement by ETS; (2) vicarious copyright infringement by Volpone; (3) contributory copyright infringement by Volpone; (4) violations of the DMCA by both Defendants; (5) that Defendants' infringed willfully; and (6) that every affirmative defense asserted by Defendants in their respective Answers fails as a matter of law.

As a threshold matter, Defendants argue that partial summary judgment is improper because Oppenheimer has failed to authenticate the Internet Archive screenshots on which all of his claims depend. Courts in this District have held that screenshots obtained using the Internet Archive are properly authenticated only when accompanied by an affidavit from an Internet Archive employee who can attest that the service reliably depicts archived or deleted websites. *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 580 (N.D. Ill. 2010); *SP Techs., LLC v. Garmin Int'l, Inc.*, No. 08 C 3248, 2009 WL 3188066, at *3 (N.D. Ill. Sept. 30, 2009); *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740, at *6 (N.D. Ill. Oct. 15, 2004). In *Specht v. Google Inc.*, the Seventh Circuit affirmed the district court's holding at summary judgment that Internet Archive screenshots were not properly authenticated because they were supported by the plaintiff's own declaration rather than a declaration submitted by "someone with personal knowledge of reliability of the archive service from which the screenshots were retrieved." 747 F.3d 929, 933 (7th Cir. 2014).

Consistent with these cases, the Court finds that Oppenheimer failed to authenticate the screenshots because neither he, nor his attorney, can properly attest to the Internet Archive's reliability. Given that Oppenheimer offers no other evidence of Defendants' alleged infringement, the Court denies his motion for partial summary judgment with respect to

13

Defendants' liability. That said, the Court acknowledges that Oppenheimer can authenticate the screenshots at trial with the testimony of an Internet Archive employee. *Garmin Int'l*, 2009 WL 3188066, at *3; *Telewizja Polska USA, Inc.* 2004 WL 2367740, at *6. And so to narrow the next stage of this litigation, the Court proceeds to comment on the merits of Oppenheimer's claims.

### A. Willful Copyright Infringement

Oppenheimer asks the Court to find direct copyright infringement by ETS and further hold that both Defendants infringed willfully. To establish infringement under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Design Basics LLC v. Signature Constr., Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Seventh Circuit precedent "establishes that a finding of willfulness is justified if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994).

The parties agree that Oppenheimer owns a valid copyright and that the Photograph appeared at each URL. Defendants' sole contention is that the Photograph is not protected by the Copyright Act because it is insufficiently original. Without citing any legal authority, Defendants assert that the Photograph is too generic to evince creativity. The artists' poses, Defendants contend, are intrinsic to any musical performer. And according to Defendants, Oppenheimer only contributed to the Photograph by pressing a button on a camera.

"Federal courts have historically applied a generous standard of originality in evaluating photographic works for copyright protection." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 516 (7th Cir. 2009). When, as here, a photographer does not create the scene depicted in a

14

photograph, originality may still "lie[] in the *rendition* of the subject matter—that is, the effect created by the combination of his choices of perspective, angle, lighting, shading, focus, lens, and so on." *Id.* For this reason, "[m]ost photographs contain at least some originality in their rendition." *Id.* Upon review of the deposit copy of the Photograph and the published version that appeared at Defendants' URLs, the Court is persuaded that Oppenheimer's rendition reflects various editorial choices related to, among other things, lighting and perspective. For this reason, the Photograph meets the generous standard of originality.

Although the Court cannot rule on infringement at this stage, it agrees that Defendants acted willfully in copying Oppenheimer's Photograph. For one, Defendants used the Photograph multiple times after they received the initial demand letter informing them that it was protected by a valid copyright. And brazenly, Defendants displayed the Photograph as recently as February 2023—that is, during this very litigation. What is more, Defendants now admit that the Photograph is protected by a valid copyright and that the Photograph appeared at multiple URLs over the course of several years. Defendants' only response is that the Photograph is insufficiently original. But, as described above, this contention is meritless. Thus, Defendants' actions, taken together, are sufficient to show reckless disregard of Oppenheimer's rights with respect to the Photograph.

### B. Vicarious and Contributory Infringement by Volpone

Oppenheimer asserts that Volpone is individually liable as both a vicarious and contributory infringer. "To prevail on a claim for vicarious copyright infringement, a plaintiff must establish that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Bell v. Chicago Cubs Baseball Club, LLC*, No. 19-cv-2386, 2020 WL 550605, at *4 (N.D. Ill. Feb. 4, 2020) (internal quotation marks

15

omitted). An individual "can be liable for vicarious copyright infringement even without knowledge of the infringement." *Id.* (internal quotation marks omitted). "Liability for contributory infringement will be imposed when a defendant, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Myers v. Harold, LLC*, 279 F. Supp. 3d 778, 796 (N.D. Ill. 2017) (internal quotation marks omitted).

The Court finds that if Oppenheimer can prove infringement, Volpone may be held individually liable under both theories. With respect to vicarious infringement, the parties agree that Volpone, as ETS' sole owner, has control over its policies and retains a financial interest in ticket sales generated by its websites, including the URLs at issue. These same undisputed facts also show that Volpone encouraged or assisted ETS' alleged infringement and is thus contributorily liable.

### C. Violations of the DMCA

According to Oppenheimer, Defendants violated § 1202(b)(1) of the DMCA by intentionally removing CMI from the Photograph and, separately, § 1202(b)(2), by displaying the altered Photograph on its websites. On this issue, Defendants' response brief fails to address any of Oppenheimer's arguments. The Seventh Circuit has "repeatedly held that a party waives an argument by failing to make it before the district court." *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). Accordingly, the Court finds that Defendants have waived arguments related to the DMCA violations.

### D. Affirmative Defenses

Collectively, Defendants assert four affirmative defenses in their Answers: (1) that all claims are barred by the statute of limitations; (2) that the copyright is invalid; (3) that the

16

Photograph is not entitled to copyright protection; and (4) that Oppenheimer failed to state a claim. Oppenheimer asks the Court to find that each affirmative defense fails as a matter of law.

Starting with the statute of limitations, the Court reiterates its above holding that claims arising out of Defendants' use of the Photograph in 2019 cannot be asserted against Volpone because they are barred by the statute of limitations. Oppenheimer may, however, assert such claims against ETS since it was named in the original, timely complaint. With respect to the 2020 and 2023 discoveries, Oppenheimer is entitled to judgment as a matter of law. Although the parties dispute whether the Internet Archive screenshots reliably depict when the Photograph first appeared at the URLs, it is undisputed that Oppenheimer discovered the URLs on February 26, 2020 and February, 1 2023—dates within the three-year limitations period. As discussed, Defendants do not offer alternative dates on which these claims started to accrue, making summary judgment appropriate.

Next, Oppenheimer is entitled to summary judgment as to Defendants' claim that the copyright is invalid and, separately, that the Photograph is not entitled to copyright protection. Defendants now admit that the copyright is valid. And, as the Court explained, the Photograph is sufficiently original such that it is entitled to copyright protection.

Finally, Defendants' failure to state a claim defense fails as a matter of law. For one, Defendants did not move to dismiss any of Oppenheimer's claims pursuant to Rule 12(b)(6); moreover, Oppenheimer has pleaded facts sufficient to state every claim asserted. *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1037 (N.D. Ill. 2013).

## CONCLUSION

In sum, Volpone's motion for summary judgment (Dkt. No. 38.) is granted in part and denied in part. Claims arising out of Defendants' 2019 uses of the Photograph cannot be asserted

against Volpone because they are barred by the statute of limitations. But, with respect to uses discovered in 2020 and 2023, Volpone is not entitled to judgment as a matter of law based on a statute of limitations defense. In addition, Oppenheimer's cross-motion for summary judgment (Dkt. No. 41) is granted in part and denied in part. Oppenheimer's failure to authenticate his only evidence of infringement prevents the Court from finding that Defendants are liable as a matter of law. However, if Oppenheimer proves infringement at trial, the Court finds that Volpone may be held liable under theories of both vicarious and contributory infringement. Lastly, the Court holds that several of Defendants' affirmative defenses fail as a matter of law: Oppenheimer can assert all claims against ETS; claims arising out of the 2020 and 2023 discoveries can be asserted against both Defendants; the copyright is valid; the Photograph is entitled to copyright protection; and, finally, Oppenheimer did not fail to state a claim.

ENTERED:

Dated: March 31, 2025

———————————————
Andrea R. Wood
United States District Judge